# IN THE SUPREME COURT OF IOWA

No. 09–0810

Filed August 6, 2010

**SWISS COLONY, INC.,** and
**SENTRY INSURANCE,**

      Appellees,

vs.

**KENT J. DEUTMEYER,**

      Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joel D. Novak, Judge.

Employee and employer appeal from a decision of the workers' compensation commissioner alleging errors in the calculation of benefits, award of overpayments credits, and determination of industrial disability. **AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Mark J. Sullivan of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

Steven T. Durick and Joseph M. Barron of Peddicord, Wharton, Spencer, Hook, Barron & Wegman, LLP, Des Moines, for appellees.

**APPEL, Justice.**

Employee appeals and employer cross-appeals from the district court's decision affirming in part and reversing in part the final decision of the workers' compensation commissioner. The parties challenge the commissioner's findings that claimant "earned less" than the usual weekly earnings of a full-time adult laborer in his field and suffered a sixty percent permanent industrial disability as not supported by substantial evidence. The employer further asserts entitlement to a credit for overpayment of weekly benefits on future permanency benefits for this injury. For the reasons expressed below, we affirm in part and reverse in part the district court judgment and remand the case for further proceedings.

### I. Factual and Procedural Background.

Kent Deutmeyer was severely injured while working at the Swiss Colony warehouse and distribution facility on July 29, 2005. The injury occurred when Deutmeyer's left leg struck a pole or beam while he was operating a forklift. The damage to the foot and lower leg was so extensive that the extremity was amputated below the knee. After three months, Deutmeyer was fitted with a prosthesis, which has since been replaced. Deutmeyer continues to suffer from hip and low back pain and has difficulty with his gait. He also suffers from "phantom leg syndrome," which causes him to feel as if his lost toes are being crushed.

At the time of his injury, Deutmeyer was a twenty-two-year-old laborer with a high school education. He worked at Swiss Colony an average of thirty hours a week at $9.25 an hour, though he had indicated in his application an availability for thirty-seven hours a week. His job responsibilities included operating a forklift, lifting heavy loads up to one hundred pounds, and standing on his feet for most of the day.

Deutmeyer considered himself to be a full-time employee of Swiss Colony.

During the time he worked at Swiss Colony, Deutmeyer also worked at Webber Metals. Deutmeyer worked an average of forty to forty-five hours a week at Webber Metals at $13.65 an hour with benefits. His principal responsibility was to operate a CNC machine, which required constant standing in order to feed parts into the machine, deburring finished parts, and stacking parts on pallets.

Deutmeyer returned to work at both Webber Metals and Swiss Colony following his injury, albeit with different responsibilities. Eventually he quit each position, in part due to his injuries and in part due to his desire to work the day shift. Deutmeyer thereafter worked a series of jobs, generally for lower wages than before his injury. At the time of the hearing, claimant was working full time at IWI at $7.50 an hour and at Taco Bell at $6.20 an hour about ten to twenty hours a week.

Deutmeyer filed a claim for workers' compensation on August 30, 2006. He submitted medical reports from two physicians, Dr. Sergio Mendoza, his primary physician, and Dr. Thomas Hughes, an occupational medicine physician. Dr. Mendoza concluded that Deutmeyer suffered a thirty percent functional disability as a result of his injury. Although Dr. Mendoza did not prescribe any work restrictions, he did outline long-term recommendations for Deutmeyer's safety. Dr. Hughes also concluded that Deutmeyer suffered a thirty percent functional disability. Dr. Hughes, however, determined that Deutmeyer was now ill-suited for numerous types of manual employment.

After a hearing, the workers' compensation deputy issued the arbitration decision. The deputy concluded that Deutmeyer suffered a sixty percent loss of his earning capacity as a result of the work injury. Next, the deputy concluded that Deutmeyer's weekly benefits should be calculated according to Iowa Code section 85.36(9) (2005) because he was a part-time employee at Swiss Colony. Classifying Deutmeyer as a part-time employee allowed the deputy to consider the claimant's "total employment," including his salary at Webber Metals, in calculating the amount of his weekly benefits. Finally, the deputy determined that based on the parties' stipulation, Deutmeyer had been overpaid for healing period and permanent disability benefits. While the deputy granted the employer a credit for the healing period overpayments, he denied Swiss Colony a credit for the excess permanent disability payments for this injury. The deputy determined that a credit can only be taken against any future entitlement to permanency benefits for a subsequent injury should claimant return to employment at Swiss Colony. The deputy's decision was affirmed in whole by the workers' compensation commissioner.

Swiss Colony sought judicial review in the district court. While the district court affirmed the commissioner's finding that Deutmeyer suffered a sixty percent industrial disability, it determined that substantial evidence did not support the commissioner's finding that Deutmeyer was a part-time employee at Swiss Colony. The district court noted that under the commissioner's own admission, there was no evidence in the record that the claimant earned less than the usual earnings of a full-time adult laborer in his field. According to the district court, instead of relying on evidence presented at the hearing, the commissioner based his conclusion that Deutmeyer was a part-time

employee on the commissioner's personal knowledge of the average work week. As a result, the district court remanded the case to the commissioner either for additional evidence or to select a rate calculation supported by the record. Finally, the district court determined that Swiss Colony was entitled to a credit for overpayment of permanency benefits for this injury. The district court found Iowa Code section 85.34(5) inapplicable and concluded that the employer was entitled to a credit based on notions of equity and the public policy underlying Iowa's workers' compensation scheme. Both parties appealed to this court.

## II. Standard of Review.

We review decisions of the workers' compensation commissioner according to the Iowa Administrative Procedure Act, Iowa Code chapter 17A. The issues in this case concern the agency's interpretation of a statute and its factual determinations. We have previously found that the legislature did not delegate the interpretation of chapter 85 to the commissioner. *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 464 (Iowa 2004). As a result, in the past we have "not give[n] the agency any deference regarding its interpretation and [were] free to substitute our judgment de novo for the agency's interpretation." *Id.*; *see* Iowa Code § 17A.19(10)(*c*).

We recently refined the analysis required to determine whether the legislature clearly vested an agency with the authority to interpret a particular statute or phrase in a statute. *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 11 (Iowa 2010) (noting that the proper inquiry is whether the agency has been vested with authority to interpret a phrase or individual statute rather than the entire legislative scheme). First, we must determine whether the legislature has explicitly granted the agency authority to interpret the disputed statute or phrase. *Id.* at 11. Here, as

in most cases, there is no such express grant of authority in Iowa Code section 85.34(5). In the absence of such an explicit grant of authority, we must determine whether the legislature, nevertheless, "clearly" vested the agency with the power to interpret the statute by implication. Iowa Code § 17A.19(10)(*c*).

Using the refined standard in *Renda*, we are not convinced the legislature intended to vest the commissioner with the authority to interpret Iowa Code section 85.34(5). In order for this court to find that a statute or phrase has been "clearly" vested with an agency by implication, such an intention must be unambiguously manifest. The test is akin to finding an implied contractual term. *Cf. Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 762 N.W.2d 463, 470 (Iowa 2009) (noting in order to find an implied contractual term there must be "unmistakable intent"). Such an intention is not apparent in the language or structure of section 85.34(5). As a result, the commissioner's interpretation is not entitled to deference, and we are free to substitute our interpretation de novo. Iowa Code § 17A.19(10)(*c*).

This court reviews an agency's factual findings for substantial evidence. *Id.* § 17A.19(10)(*f*). The code defines substantial evidence as:

> the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

*Id.* § 17A.19(10)(*f*)(1). Evidence is not insubstantial merely because the court could draw a different conclusion from the record. *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007). The ultimate question is whether the record when viewed as a whole supports the finding actually made. *Fischer v. City of Sioux City*, 695 N.W.2d 31, 34 (Iowa 2005).

**III. Discussion.**

On appeal to this court, the parties allege four errors. Deutmeyer claims that the district court erred in (1) concluding that there was no substantial evidence to support the commissioner's finding that he was a part-time employee and (2) allowing Swiss Colony credit for overpayment of weekly benefits. Swiss Colony conversely asserts that the district court erred in (1) remanding the case to the agency on the part-time benefits issue and (2) concluding that substantial evidence supported the commissioner's finding that Deutmeyer suffered a sixty percent permanent industrial disability.

**A. Calculation of Benefits.** "The compensation to be received by an injured employee is based on 'weekly earnings' at the time of injury." *Hartman v. Clarke County Homemakers*, 520 N.W.2d 323, 327 (Iowa Ct. App. 1994). Weekly earnings are defined in Iowa Code section 85.36 as:

> gross salary, wages, or earnings of an employee to which such employee would have been entitled had the employee worked the customary hours for the full pay period in which the employee was injured, as regularly required by the employee's employer for the work or employment for which the employee was employed.

Iowa Code § 85.36. In order to accommodate a variety of employment scenarios, section 85.36 goes on to provide several methods to calculate an employee's weekly earnings.

In calculating Deutmeyer's benefits, the workers' compensation commissioner relied upon the methodology set forth in section 85.36(9). That section provides:

> If an employee earns either no wages or less than the usual weekly earnings of the regular full-time adult laborer in the line of industry in which the employee is injured in that locality, the weekly earnings shall be one-fiftieth of the total earnings which the employee has earned from all employment during the twelve calendar months immediately preceding the injury.

*Id.* § 85.36(9). Before utilizing this methodology, however, the commissioner must make a preliminary factual finding that the employee either (1) earns no wages or (2) earns " 'less than the usual weekly earnings of the regular full-time adult laborer in the line of industry in which the employee is injured in that locality.' " *King v. City of Mt. Pleasant,* 474 N.W.2d 564, 566 (Iowa 1991) (quoting Iowa Code § 85.36(10) (1987) (now § 85.36(9))). The commissioner found that Deutmeyer earned less than the usual earnings of a regular full-time laborer in his line of industry. The commissioner then utilized section 85.36(9) to calculate Duetmeyer's rate of weekly benefits based on his earnings at both Swiss Colony and Webber Metals.

On appeal, Swiss Colony claims the commissioner's finding that Deutmeyer earned less than the usual earnings of a regular full-time laborer in his line of industry is not supported by substantial evidence. We agree. In making his preliminary factual finding, the commissioner candidly acknowledged that "[n]either party offered evidence as to whether or not Kent's earnings or hours at Swiss Colony were lower or higher than a regular full-time laborer in the line of industry in which Kent was injured and in that locality." Notwithstanding the lack of evidence, the commissioner decided that Deutmeyer was a part-time employee. This conclusion was based on the commissioner's belief that "the vast majority of all industries in this state view 40 hours a week as full-time." Such a conclusion is not consistent with the language of the statute and our prior precedent.

In *King,* members of the Mt. Pleasant city council sought workers' compensation benefits after a gunman opened fire at a city council meeting, killing the mayor and severely injuring two council members. *King,* 474 N.W.2d at 565. Each of the claimants held full-time

employment in addition to their membership on the council. *Id.* The council members filed claims for workers' compensation under Iowa Code section 85.36(10), asserting that their benefits should be calculated based on their respective total incomes because they were part-time city employees. *Id.* This court disagreed. *Id.* at 566. This court noted that the relevant inquiry is not whether the claimants had outside employment, either full- or part-time. *Id.* The relevant inquiry is whether the claimants' weekly earnings were inconsistent with the earnings of full-time Mt. Pleasant officials. *Id.* at 566–67. Having found that the claimant's earnings were not inconsistent, this court found section 85.36(9) inapplicable. *Id.*

Applying *King* to the instant case, the workers' compensation commissioner erred in finding that Deutmeyer was a part-time employee of Swiss Colony. Whether an employee works a forty-hour week is not the sole criterion for determining whether that employee "earns less" than similar laborers in his field. *Id.* The language in section 85.36(9) distinguishes full- and part-time employees on the basis of weekly earnings, not the number of hours worked per week.

We recognize, of course, that our workers' compensation statute is to be liberally construed to implement its remedial purposes. *Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d 387, 394 (Iowa 2009). Nonetheless, the principle of liberal construction does not vest this court with an editor's pen with the power to add or detract from the legislature's handiwork. Had the legislature intended to establish the forty-hour week as standard for full-time employment it could have done so. *See Hornby v. State*, 559 N.W.2d 23, 25 (Iowa 1997) ("We are guided by what the legislature actually said, rather than that which it might or should have said."). Instead, in section 85.36(9), the legislature necessarily recognized that

the forty-hour week is not the standard for *every* industry within the state by making "earnings" the operative factor. As a result, section 85.36(9) is applicable only where a claimant earns less than the usual weekly earnings of a full-time adult laborer in his or her "line of industry." Based upon the commissioner's correct observation that there is "no evidence" of the "usual weekly earnings" of laborers in Deutmeyer's field in the record, we make the inescapable conclusion that his finding is not supported by substantial evidence.

Because we find that Deutmeyer's weekly benefits were erroneously calculated under section 85.36(9), we must determine the proper remedy. As noted previously, the district court remanded the case to the commissioner either for "additional evidence necessary to make a factual finding as to the usual weekly earnings of a regular full time adult laborer in [Deutmeyer's] line of industry and locality, or select a different rate calculation method supported by the facts." Deutmeyer argues that remand is necessary as there is confusion regarding what type of evidence is necessary to support application of 85.36(9) and because failure to apply section 85.36(9) would greatly reduce his weekly benefits.

We disagree. When a record is inadequate, remand for additional evidence is generally not appropriate and the issue will be decided adversely to the party bearing the burden of proof. *Murillo v. Blackhawk Foundry*, 571 N.W.2d 16, 19 (Iowa 1997). For equitable reasons, however, remand for additional evidence will be allowed where there are "good reasons" for the failure. *Id.* For example, this court has ordered remand of an agency action where it announced a new rule, even though the new rule may have been predictable from prior precedent. *Id.*

No "good reasons" exist to warrant remand for additional evidence here. This court's decision in *King*, 474 N.W.2d at 565, was announced almost twenty years prior to the evidentiary hearing in this case. *King* established the requirement for a preliminary factual finding of lower earnings prior to the application of section 85.36(9). We do not regard our opinion in this case as establishing new law, but simply applying existing law. As a result, remand for additional evidence on the earnings issue is not available under *Murillo*. Because Deutmeyer is not entitled to benefits under section 85.36(9) on the record before the agency under established precedent, the matter must be remanded to the commissioner for a recalculation of benefits under the proper standard.

**B. Credit for Overpayments.** Prior to the arbitration decision in this case, Swiss Colony paid Deutmeyer weekly compensation benefits at a rate of $441.88. This amount was in excess of the weekly benefits awarded by the commissioner. While both parties agree that Swiss Colony is entitled to a credit for these overpayments, they disagree as to what type of credit is permitted under chapter 85.

Deutmeyer argues that section 85.34(5) is the exclusive remedy for the overpayment of permanency benefits by employers. That section provides:

> If an employee is paid any weekly benefits in excess of that required by this chapter . . . , the excess paid by the employer shall be credited against the liability of the employer for any future weekly benefits due pursuant to subsection 2, for a subsequent injury to the same employee.

Iowa Code § 85.34(5). Under section 85.34(5), Deutmeyer asserts that when an overpayment of weekly benefits occurs, employers are only entitled to a credit against a future injury and not against future weekly benefits for the same injury. In support, Deutmeyer points to the phrase

"*any* weekly benefits." Swiss Colony conversely asserts that the claimant is interpreting section 85.34(5) too expansively, finding the operative words of the statute to be "in excess of that required by this chapter." According to the employer, section 85.34(5) only applies where the employer has overpaid the total permanent disability award and not the rate of each separate weekly payment. Section 85.34(5) simply has no relevance where, as is the case here, the claimant has not yet received his total permanency award. In such cases, equity and public policy support allowing employers a credit for overpayments on future benefits for the same injury.

We agree with Deutmeyer. In interpreting statutes, our goal is to derive legislative intent. *State v. Wagner,* 596 N.W.2d 83, 87 (Iowa 1999).

> We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used.

*Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted).

> Additionally, legislative intent is derived not only from the language used but also from "the statute's 'subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations.'"

*State v. Dohlman,* 725 N.W.2d 428, 431 (Iowa 2006) (quoting *Cox v. State,* 686 N.W.2d 209, 213 (Iowa 2004)).

The plain language of section 85.34(5) directs that the overpayment of *any* weekly benefits be credited to payments for subsequent injuries. "Any" is commonly understood to have broad application. *See Merriam-Webster's Collegiate Dictionary* 53 (10th ed. 2002) (defining "any" as "every" or "used to indicate one selected without

restriction"); *see also State v. Owens*, 635 N.W.2d 478, 486 (Iowa 2001) (reading "any state or federal statute" broadly); *Fisher Controls Int'l, Inc. v. Marrone*, 524 N.W.2d 148, 149 (Iowa 1994) (holding phrase "any legal action" broader than "an action"); *Iowa Realty Co. v. Jochims*, 503 N.W.2d 385, 386 (Iowa 1993) (interpreting "antennas of any kind" not to create an ambiguity and to include satellite dishes). By using a word with an expansive import, we conclude that section 85.34(5) must be interpreted to apply to *all* overpayments of benefits, including an overpayment of weekly benefits and not simply an overpayment of the entire benefit award. As a result, Swiss Colony is only entitled to a credit for the overpayments against future benefits for a subsequent injury and not against future benefits for this injury.

As with our approach to the part-time employment issue in this case, we must base our interpretations on what the legislature did, not on what it might have done or should have done. We recognize that under the limitation for recovery of overpayments contained in the statute, employers who turn out to be overly generous on the front end of workers' compensation proceedings may find themselves without an effective remedy at the back end of the proceedings. We further recognize that the limitation may discourage employers from voluntarily paying generous benefits pending the outcome of workers' compensation proceedings. While policy arguments may be made for a contrary result, such argument must be made to the legislature, not the court. *See, e.g.*, *Baker v. Shields*, 767 N.W.2d 404, 408–09 (Iowa 2009).

**C. Industrial Disability.** On appeal, Swiss Colony asserts that the commissioner's award of sixty percent industrial disability is not supported by substantial evidence. The employer points to the testimony of Drs. Hughes and Mendoza, both of which stated that Deutmeyer

suffered a thirty percent whole body impairment as the result of his injury. Swiss Colony further notes that Deutmeyer returned to work at both Webber Metals and Swiss Colony following his injury. He subsequently left that employment for reasons not exclusive to his injury. While Deutmeyer currently earns less than he did prior to his injury, Swiss Colony asserts that following his injury, the claimant was able to hold two jobs.

Industrial disability is intended to measure an injured worker's lost earning capacity. *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 653 (Iowa 2000). This inquiry is a multi-factored test, including "consideration of not only the claimant's functional disability, but also [his] age, education, qualifications, experience, and ability to engage in similar employment." *Id.* The relevant question thus is more than the worker's physical ability. *Id.* Instead, the focus is on the injured worker's ability to be gainfully employed. *Id.* Considering Deutmeyer's lack of post-high school education or vocational training and the undisputed physical impairment caused by his amputation, we conclude the commissioner's determination that Deutmeyer suffered a sixty percent permanent disability is supported by substantial evidence.

### IV. Conclusion.

Substantial evidence does not support the commissioner's finding that Deutmeyer "earned less" than the usual earnings of a full-time adult laborer in his field. As a result, this case is remanded for a recalculation of weekly benefits supported by the record. Substantial evidence does support the commissioner's finding that claimant suffered a sixty percent permanent industrial disability. Furthermore, the employer is entitled to a credit for overpayments only on benefits for a subsequent injury and

not against future benefits related to this injury. Costs on appeal are taxed to the parties equally.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**