# IN THE COURT OF APPEALS OF IOWA

No. 14-0492
Filed January 14, 2015

**HYDECKER WHEATLAND COMPANY**
**and ZURICH NORTH AMERICA,**
    Petitioners-Appellants,

**vs.**

**KELLY BRUCE,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

An employer appeals a district court ruling upholding the finding of total industrial disability by the worker's compensation commissioner. **AFFIRMED.**

Sasha L. Monthei of Scheldrup, Blades, Schrock & Smith, P.C., Cedar Rapids, for appellants.

Paul J. McAndrew Jr. of Paul McAndrew Law Firm, P.L.L.C, Coralville, for appellee.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

Kelly Bruce is left handed. He lost his left ring finger and left pinky, as well as his right ring finger, as the result of an industrial accident in 2010. Gone too was his livelihood. Bruce had worked stringing electrical lines his whole adult life. At age forty-seven, he was working as a journeyman lineman for Hydecker Wheatland Company when his boom truck came into contact with a 7200-volt wire, causing severe electrical burns to his hands. After being disabled by the electrical burns, Bruce applied for worker's compensation benefits. The commissioner decided he was permanently and totally disabled.

The employer claims the commissioner's decision is not supported by substantial evidence and is illogical, irrational, and wholly unjustifiable. Mindful of the deference accorded agency fact finding and its application of law to fact, we reject the employer's claims. Because Bruce presented credible evidence he could no longer secure a job in the competitive workforce given his injuries and existing limitations, the commissioner's determination of one-hundred percent industrial disability should not be disturbed.

I.     **Background Facts and Proceedings**

Bruce struggled in school and later recalled he was "not very academic." He dropped out in his sophomore year and never earned a GED. Without a diploma, he worked as an apprentice lineman from 1980 through 1985 and passed the test to be a journeyman in 1987. Since then, Bruce has held almost two dozen positions in the electric power industry, including working as a foreman for three different employers.

On October 15, 2010, Bruce was working for the Michigan-based Hydecker Wheatland Company installing new electrical lines. He was standing in the bucket of a boom truck that touched a live electrical wire. The voltage entered his body through his right hand and surged out through the left hand, causing second- and third-degree burns to both hands, along with significant nerve damage. Surgeons at the burn center of University Hospitals in Iowa City developed a treatment plan for Bruce, which included amputation of the badly damaged fingers, as well as removal of additional areas of burned skin to facilitate skin grafting.

After several months of procedures and rehabilitation, Bruce was seen by Dr. Ericka Lawler on October 24, 2011, for a final evaluation.[1] Dr. Lawler found Bruce's right hand impairment to be twenty-three percent, his upper right extremity impairment to be twenty-three percent, and a whole person impairment to be fourteen percent. Dr. Lawler found his left hand impairment to be twenty-five percent, upper left extremity impairment to be twenty-three percent, and a whole person impairment to be fifteen percent. Because both upper extremities were impaired, she found the total whole person impairment to be twenty-seven percent. Dr. Lawler permanently restricted Bruce from climbing ladders or poles and found him to be classified as "medium physical demand."[2]

Bruce underwent two independent medical evaluations (IMEs). The first was completed by Dr. Robin Epp. Dr. Epp found an impairment of thirty-three

---

[1] Dr. Lawler, an orthopedic surgeon, started treating Bruce four weeks after the accident.
[2] This level consists of the occasional lifting of objects no greater than forty-four pounds, frequent lifting of objects weighing twenty-two pounds, and constant lifting of nine-pound objects.

percent impairment for the upper left extremity and twenty percent whole person impairment. She found a twenty-seven percent impairment for the upper right extremity and sixteen percent whole person impairment. Combining the two, she found a total impairment of forty-five percent to the upper extremities, which converted to twenty-eight percent whole person impairment. Dr. Epp mentioned the possibility of short-term memory problems, but deferred any impairment rating on that issue until claimant was seen in follow-up by the neuropsychologist.

On February 21, 2012, Bruce saw Dr. Charles Buck for a second IME at Hydecker's request. Dr. Buck agreed with some of Dr. Lawler's conclusions, but gave different impairment ratings. He found impairments of fifteen percent of the right hand, fourteen percent to the right upper extremity, and eight percent to the body as a whole for the right side injuries. He found impairments of twenty-five percent to Bruce's left hand, twenty-three percent to the upper left extremity, and fourteen percent to the body as a whole for the left side injuries. Dr. Buck concluded there was a total impairment to the body as a whole at twenty-five percent with all injuries included.

Also in February 2012, vocational expert Kent Jayne assessed Bruce's vocational potential and earning capacity. Jayne found Bruce was "clearly unable to return to his relevant pre-injury work as an electrical lineman." The assessment further concluded Bruce's low test scores[3] presented a "dire

---

[3] Testing indicated Bruce was in the 14th percentile in nonverbal reasoning, 19th percentile in math computation protocol, and the 10th percentile in clerical abilities. Bruce was not competitive in motor coordination and manual dexterity.

vocational impairment" when considering other types of employment. Bruce had no experience as a supervisor and given his education level, employment in that area would be unlikely.

Another vocational report done by rehabilitation counselor Lana Sellner found Bruce could perform a number of jobs including meter reader, security officer, and sales associate. Sellner completed her report based on information provided by Hydecker and did not meet with Bruce.

In April 2012, Bruce brought this claim against Hydecker and its insurer Zurich North American Insurance Co. and the Second Injury Fund of Iowa.[4] On April 13, 2012, a deputy worker's compensation commissioner held a hearing on Bruce's claim. Bruce testified he still suffers severe pain when anything comes into contact with the injured places on his hands: "it feels like I'm getting shocked. I mean, literally feels like I'm getting shocked." He also testified to having "phantom pain" in the joints that were amputated, as well as recurring nightmares about being shocked.

In addition, Bruce discussed a temporary job he had helping with emergency electrical repairs after Hurricane Irene in August 2011. Bruce obtained the two-week position through an old friend who worked for NG Gilbert Corporation. Unable to perform his prior duties as a lineman, Bruce patrolled the line and assessed damage, but found the frequency of his nightmares increased being around electrical power work: "I have a big fear of seeing someone get hurt."

---

[4] The Second Injury Fund is not a party to this appeal.

On January 10, 2013, the deputy commissioner found Bruce was unable to return to the competitive work force. The deputy decided Bruce was permanently and totally disabled, and awarded one-hundred percent industrial disability benefits. On September 3, 2013, the commissioner affirmed and adopted the deputy's decision. Hydecker sought judicial review. Following a hearing, on February 26, 2014, the district court affirmed the commissioner's award of total permanent disability benefits. Hydecker now appeals.

## II.    Scope and Standards of Review

Our review of an agency proceeding is governed by Iowa Code section 17A.19(10) (2013). We may "reverse, modify, or grant other appropriate relief" if we determine the agency's ruling was "not supported by substantial evidence" or was "based upon an irrational, illogical, or wholly unjustifiable application of law to fact." *See* Iowa Code §§ 17A.19(10)(f), (m). Substantial evidence is defined as "the quantity and quality of evidence that would be deemed sufficient by a . . . reasonable person, to establish the fact at issue." Id. § 17A.19(10)(f)(1). We give significant deference to the agency's credibility findings. *Lange v. Iowa Dep't of Revenue*, 710 N.W.2d 242, 247 (Iowa 2006). Because Hydecker's challenge to the commissioner's industrial disability determination depends on the application of law to facts, we will not disturb the ruling unless it is "irrational, illogical, or wholly unjustifiable." *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 526 (Iowa 2012).

When we review a district court decision reviewing an agency action, our task is to determine if we would reach the same result as the district court in

applying the Iowa Administrative Procedure Act. *Gits Mfg. Co. v. Frank*, 855 N.W.2d 195, 197 (Iowa 2014). "If our conclusions align, we affirm; otherwise we reverse." *Dunlap v. Action Warehouse*, 824 N.W.2d 545, 554 (Iowa Ct. App. 2012). To do this, we must determine if substantial evidence from the record as a whole supports the agency finding. *See Gits*, 855 N.W.2d at 197. "Substantial evidence supports an agency's decision even if the interpretation of the evidence may be open to a fair difference of opinion." *Id.* (citing *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007)). Evidence is not insubstantial simply because the court may draw a different conclusion from the record. *Id.*

When analyzing worker's compensation appeals, we recognize the law "should be, within reason, liberally construed" to benefit working men and women. *See Univ. of Iowa Hosp. & Clinics v. Waters*, 674 N.W.2d 92, 96 (Iowa 2004).

## III. Analysis of Employer's Claims

Hydecker argues that despite the "dramatic mechanism" of Bruce's work injury, he sustained "only moderate industrial disability" and has not reentered the work force due to his unwillingness, not inability, to secure employment. The employer focuses its challenge on the commissioner's consideration of Hydecker's "alleged PTSD and phantom pain conditions" in determining the extent of Bruce's earning capacity.

In response, Bruce asserts phantom pain is a type of neuropathic pain and his reports of such pain were substantiated in the agency record. He also argues his mental injuries—including flashbacks, nightmares, and anxiety—were

supported by substantial evidence, including his own testimony, which the commissioner found credible. We agree with Bruce's position. The commissioner was entitled to consider the toll of the electrical burns on Bruce's physical abilities, as well as the impact on his psychological functioning when deciding the extent of his industrial disability.

Industrial disability measures an injured worker's lost earning capacity. *Swiss Colony, Inc. v. Deutmeyer,* 789 N.W.2d 129, 137 (Iowa 2010) (reiterating multi-factored test for functional disability, including worker's age, qualifications, and ability to engage in similar employment). We focus not solely on what Bruce "can and cannot do" but look at his ability "to be gainfully employed." *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 157 (Iowa 1996). It is undisputed that Bruce cannot return to his prior occupation. Neither vocational assessment found Bruce capable of being a lineman. He can no longer climb ladders or use his hands to grip. Experts placed his functional impairment at between twenty-five and twenty-eight percent of the body as a whole.

Bruce's age, lack of education and poor academic skills, and his limited work experience all weigh as significant factors in support of the commissioner's decision. Bruce is now fifty-one years old. He has neither a high school diploma nor his GED. The job of lineman is the only work he has done for the last thirty years. His loss of fingers and continuing pain in his hands severely limits his ability to write and use computers. Bruce testified he was not capable of being a

foreman because he could not draft reports or show others how to do the work.[5]
Moreover, the commissioner was entitled to embrace Jayne's vocational
assessment, which found Bruce could not compete for office jobs because of his
low non-verbal reasoning, math computation, and clerical scores. It is not our
role to reassess the weight of the evidence assigned by the agency. *See Cedar
Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 853 (Iowa 2011).

Like the district court, we affirm the agency's determination regarding the
percentage of Bruce's industrial disability. Permanent total industrial disability
does not mean a state of absolute helplessness. *IBP, Inc. v. Al–Gharib*, 604
N.W.2d 621, 633 (Iowa 2000). The condition "occurs when the injury wholly
disables the employee from performing work that the employee's experience,
training, intelligence, and physical capacity would otherwise permit the employee
to perform." *Id.* To establish a total disability, "an employee need not look for a
position outside the employee's competitive labor market." *Annett Holdings, Inc.*,
814 N.W.2d at 524. Bruce established that he could not compete for jobs in his
field, nor could he realistically retrain for other positions given his cognitive
limitations and physical restrictions.

---

[5] Hydecker points out that after his injury Bruce received $21,000 for working eighteen-hour days for two weeks restoring power on the East Coast following Hurricane Irene. The record shows Bruce received that job through a friend who did not know of his injury. While Bruce worked alongside a foreman patrolling lines and assessing damage, that temporary duty does not undermine the agency's finding that Bruce could not gain and maintain similar work in the competitive labor market.

Accordingly, the commissioner's fact finding was supported by substantial evidence and the determination that Bruce suffered one-hundred percent industrial disability was not irrational, illogical, or wholly unjustifiable.

**AFFIRMED.**