# IN THE COURT OF APPEALS OF IOWA

No. 14-1648
Filed April 22, 2015

**POLARIS INDUSTRIES, INC.,**
    Plaintiff-Appellant,

**vs.**

**KEN E. SHARAR,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

Polaris Industries, Inc. appeals from the district court's affirmance of the Iowa Workers' Compensation Commission's award of permanent partial disability benefits to Ken Sharar. **AFFIRMED.**

D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellant.

Matthew T.E. Early of Fitzgibbons Law Firm, L.L.C., Estherville, for appellee.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, J.**

Polaris Industries, Inc. ("Polaris") appeals from the district court's affirmance of the Iowa Workers' Compensation Commission's award of permanent partial disability benefits to Ken Sharar.

### I. Factual and Procedural Background

Sharar has been employed by Polaris since 2003. His work at Polaris, like most of his employment history, primarily involved physical labor. On November 3, 2009, he fell while performing his work duties and sustained serious injuries to his right shoulder. He underwent two surgeries and extensive physical therapy. He returned to work on light duty but struggled with clerical tasks that required the use of a computer.[1] He eventually settled into a position operating an air lift. He was able to perform these work tasks largely unassisted.

Sharar achieved maximum medical improvement (MMI) on February 21, 2011. The doctor who determined he had reached MMI opined Sharar suffered "a total impairment rating of 5% of the right upper extremity due to his decreased range of motion." A second doctor performed an independent medical evaluation of Sharar. He calculated a fifteen percent permanent impairment of the extremity—equivalent to a nine percent whole-person impairment—and estimated Sharar could lift thirty-five pounds using both hands. A vocational consultant wrote in an evaluation of Sharar, "It is reasonably likely that he has suffered a reduction in employability of 61% and a reduction in labor market

---

[1] The record shows Sharar struggled with a learning disability and participated in special education classes throughout his elementary and secondary education. He has no post-secondary degree.

access of approximately 70%. This is reasonably expected to result in a loss in earning capacity estimated at approximately 65%."

Sharar filed for permanent partial disability benefits. A deputy commissioner at the agency conducted a hearing. He found Sharar to have sustained a forty percent loss of earning capacity and awarded him 200 weeks of industrial disability benefits. Polaris appealed the decision of the deputy commissioner, and the commissioner affirmed the award. Polaris petitioned the district court for judicial review, and the court affirmed. Polaris now appeals from the district court's affirmance.

## II. Standard and Scope of Review

We review for correction of errors at law. *Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d 387, 390 (Iowa 2009). We review the district court decision by applying the standards of the Iowa Administrative Procedure Act—Iowa Code chapter 17A (2013)—to the agency action to determine if our conclusions are the same as the district court's. *Id.* at 390.

We review the agency's factual findings for substantial evidence. *Swiss Colony, Inc. v. Deutmeyer*, 789 N.W.2d 129, 133 (Iowa 2010). Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). "Evidence is not insubstantial merely because the court could draw a different conclusion from the record." *Swiss Colony*, 789 N.W.2d at 133.

"The ultimate question is whether the record when viewed as a whole supports the finding actually made." *Id.* at 133–34.

### III. Discussion

Iowa Code section 85.34(2)(u) provides:

In all cases of permanent partial disability other than those hereinabove described . . . , the compensation shall be paid during the number of weeks in relation to five hundred weeks as the reduction in the employee's earning capacity caused by the disability bears in relation to the earning capacity that the employee possessed when the injury occurred.

We refer to a reduction in earning capacity as "industrial disability." *Westling v. Hormel Foods Corp.*, 810 N.W.2d 247, 253 (Iowa 2012); *see Diederich v. Tri-City R. Co.*, 258 N.W. 899, 902 (Iowa 1935).

A determination of a reduction in earning capacity is an issue of fact. *See, e.g.*, *Excel Corp. v. Smithart*, 654 N.W.2d 891, 900–901 (Iowa 2002). "The focus is not solely on what the worker can or cannot do; industrial disability rests on the ability of the worker to be gainfully employed." *Clark v. Vicorp Restaurants, Inc.*, 696 N.W.2d 596 (Iowa 2005) (citation omitted). "Several factors are considered . . . includ[ing] the employee's functional impairment, age, education, intelligence, work experience, qualifications, ability to engage in similar employment, and adaptability to retraining." *Keystone Nursing Care Center v. Craddock*, 705 N.W.2d 299, 306 (Iowa 2005). We may also consider the employee's pre- and post-injury earnings, though "[a] reduction in earning capacity can be shown even though the employee's actual earnings have increased." *Id.*

Polaris does not contest that Sharar is entitled to some amount of industrial disability benefits, but it contends the award of forty percent is excessive and not supported by substantial evidence. However, on our review of the record and consideration of the applicable factors, we find substantial evidence to support the agency's determination. Sharar's functional impairment prevents him from engaging in heavy physical labor, and most of his prior work experience and qualifications relate to physical labor. At the time of the hearing, Sharar was forty-eight years old and high-school educated. The record shows he experienced difficulties adapting to retraining and learning new skills. Although Sharar's *actual* earnings at the time of the hearing were higher than at the time of the injury, the report of the vocational consultant indicates that Sharar's earning *capacity* in the general labor market had decreased.

Polaris relies on two cases to argue that Sharar is not entitled to forty percent industrial disability "as a matter of law": *Wright v. MidAmerican Energy Co.*, No. 01-0312, 2002 WL 987870, at *3 (Iowa Ct. App. May 15, 2002), and *Mayhew v. Tri County, Inc.*, No. 5035006 (Iowa Workers' Comp. Comm'n Oct. 4, 2011) (appeal decision). We first note that a determination of the extent of Sharar's loss of earning capacity is an issue of fact, not of law. Because we are reviewing a determination of fact, we do not agree with Polaris's assertion that the agency's award is "inconsistent with [its] prior practice and precedents." What Polaris describes as inconsistencies between Sharar's case and his cited cases are simply different findings of fact based upon the circumstances unique to each case.

The two cases to which Polaris cites are factually distinguishable from the case before us. In *Wright*, the employee had developed new skills at work that expanded his potential employment opportunities. *Wright*, 2002 WL 987870, at *3. His injury did not negatively impact his ability to work in his field, and "[a] comparison between [his] potential earning capacity prior to the accident and his earning potential after the accident reveal[ed] no change." *Id.* The record before us shows Sharar has been unable to develop new skills to improve his employability. His injury impacts his ability to engage in physical labor, and his earning capacity has decreased. *Wright* does not undermine the agency's determination.

In *Mayhew*, the agency found that its initial award of forty percent industrial disability was too high because some percentage of the employee's loss of earning capacity resulted from a *non-work-related* injury. *Mayhew*, No. 5035006, slip op. at 2. Our record does not reflect Sharar has suffered an injury outside of work that negatively impacted his earning capacity, and *Mayhew* has no applicability in this case.

Polaris next argues the agency improperly speculated as to Sharar's future earnings in making its determination. In its consideration of Sharar's adaptability to retraining, the agency found, "[Sharar's] ability to retrain appears to be rather limited and his ability to access the labor market if he were not employed by Polaris would be clearly diminished." Polaris has mischaracterized this finding as the agency's speculation that Sharar is "likely to lose his job at Polaris." The agency's statement is not speculation as to Sharar's future employment at Polaris; rather, it is a proper consideration of one factor bearing

upon Sharar's employability in the general labor market in the abstract based on his condition at the time of the hearing.

We, like the district court, find substantial evidence supports the agency's award of forty percent industrial disability. We further find the agency did not engage in any improper speculation in reaching its conclusion. We affirm.

**AFFIRMED.**