# IN THE COURT OF APPEALS OF IOWA

No. 20-1738
Filed December 15, 2021

**KRYSTAL FOSTER,**
    Plaintiff-Appellee,

**vs.**

**EAST PENN MANUFACTURING CO., INC., and SENTINEL INSURANCE CO.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

Defendant-employer and the insurance company appeal the Iowa Workers' Compensation Commissioner's imposition of penalty benefits and the denial of credit for voluntary past payment. **AFFIRMED.**

Tiernan T. Siems of Erickson & Sederstrom, P.C., Omaha, NE, for appellant.

Randall P. Schueller of Loney & Schueller, LLC, West Des Moines, for appellee.

Considered by Tabor, P.J., Greer, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GREER, Judge.**

Krystal Foster was injured at work on November 21, 2016.  Her employer, East Penn Manufacturing Company, Inc.,[1] accepted the injury as work related and paid for the initial medical treatment and for benefits associated with her time off work.  But when her first surgery did not wholly fix her condition, the doctor recommended a second surgery and again took her off work to recover.  At this point, East Penn refused to authorize the second surgery or pay temporary total disability (TTD) benefits Foster argued were owed for the time she was unable to work.  After a hearing, the deputy workers' compensation commissioner imposed penalty benefits for the delay and declined to credit East Penn for other voluntary payments made.  On appeal from the arbitration decision, the Iowa Workers' Compensation Commissioner affirmed the deputy.  East Penn sought judicial review of the commissioner's ruling.  After the district court affirmed the decision of the commissioner, East Penn appealed.

On this appeal, East Penn asserts the commissioner lacked substantial evidence to support the award of penalty benefits because (1) the delay to pay was necessary to investigate the claim, (2) there existed a reasonable basis to delay payment of benefits, and (3) there was a good faith basis to dispute Foster's entitlement to benefits.  Even if payments are required from East Penn, it contends a credit for other benefits paid should apply and nothing is owed.  For the reasons discussed below, we affirm the agency's order.

---

[1] The employer and its insurer, Sentinel Insurance Company, are co-parties in this case and act through joint representation.  We refer to them collectively as "East Penn."

**I. Background and Prior Proceedings.**

Foster started working as a finish floater at East Penn in 2014. She worked on an assembly line making batteries. Foster had been doing this work for about two and one-half years when, on November 21, 2016, as she pushed batteries across a pallet, she heard her left shoulder pop. East Penn treated this as a workers' compensation claim and sent Foster to Dr. Richard Goding, an orthopedic surgeon who saw Foster over twenty times following the injury.[2] To improve Foster's condition, in February 2017, Dr. Goding recommended a surgery on Foster's left shoulder and bicep, which East Penn authorized. That same month, Foster resigned her employment with East Penn to start a snow removal and lawn care company with her husband.

Yet after the February surgery, Foster's shoulder pain continued. So, in August, East Penn sent Foster to a second orthopedic surgeon, Dr. Mark Kirkland. Dr. Kirkland opined that Foster was still not at maximum medical improvement (MMI), noting that Foster did not have full range of motion, had a popping noise coming from her left acromioclavicular joint, and still experienced pain. Dr. Kirkland agreed with Dr. Goding that the continuing shoulder issues Foster was experiencing were related to the work injury.

To further evaluate Foster's condition, Dr. Goding requested authority from East Penn to perform an MRI. In January 2018, East Penn authorized the test. After reviewing the results, Dr. Goding took Foster off work and sought approval for a second surgery in February of 2018 to repair a recurrent tear in her left

---

[2] As a treatment course, Dr. Goding also prescribed physical therapy and various injections for pain.

shoulder. On February 15, in the week after the second surgery was recommended, a series of emails were exchanged between East Penn's and Foster's counsel. Foster's counsel sent East Penn's counsel an email, which read in part:

> [Foster] just called me and indicated [the claims representative] informed Dr. Goding's office that his surgery recommendation is not approved. I'm sure [Foster] has that wrong as obviously your client must approve all Dr. Goding's recommendations for treatment. We are dissatisfied with the care if surgery is not approved by the end of the day today. If not approved or I don't hear anything from you by the end of the day, I will file a petition for alternate medical care tomorrow.

In response, East Penn's counsel asked for more time to figure out what was happening, stating:

> Please hold off on the alt care until I can see what is going on. I just received your records and additional records from the carrier. I'll talk to [the claims representative] and get a status on this, though I disagree with you that the carrier must authorize all care recommended by the treating doctor. I believe there is a Court of Appeals case on that issue.

True to her word, Foster filed a petition for alternate care on February 16, 2018, and another on March 7. East Penn continued to withhold approval on the surgery and resisted the petitions because it disputed its liability.[3] Foster did have the surgery and eventually returned to work at her company in April of 2018. East Penn declined to pay for the surgery or benefits for the time Foster was off work and also refused to reimburse Foster's private health insurer for the care.

---

[3] The answer to the first petition for alternate medical care was filed on February 23, 2018, and the second on March 7. Each of Foster's petitions was dismissed because East Penn refused to authorize the surgery.

Facing Foster's requests for payment, East Penn sent Foster's records to a third surgeon, Dr. William Boulden, for an independent medical evaluation (IME).[4] The doctor authored a June 1 report and opined that the second surgery was meant to address a medical issue not related to the work injury, which seemed to have presented after the first surgery. Based on this report, on June 11, 2018, East Penn sent Foster a formal letter denying payment for the surgery and remuneration for the time Foster was unable to work. Foster contends this was her first notice of the reasons surrounding the failure to pay her. Yet, that same month, based upon Dr. Kirkland's permanency rating, East Penn voluntarily paid Foster $11,533, representing a five percent whole body permanent impairment rating for fifty weeks.

Now with the nonpayment issue defined by East Penn, Foster underwent another IME on January 3, 2019, with a doctor of her choice, Dr. Sunil Bansal. Dr. Bansal determined that the second surgery was necessary to correct a recurrent tear as a result of the work-related injury.[5] Dr. Bansal believed Foster was still not at MMI and recommended another MRI and additional treatment based on its results.

To bring matters to a head, in February 2018, Foster filed a petition seeking workers' compensation benefits. While neither the "time disabled" nor the "nature and extent of permanent disability" were known at the time she filed her petition,

---

[4] As Foster had already had the surgery by the time records were sent to Boulden, he only performed a record review; it is disputed what records he actually reviewed.

[5] Foster eventually required a third surgery, which East Penn did authorize.

Foster later specifically requested TTD benefits[6] related to her time off work from January 25, 2018 until April 12, 2018, as well as penalty benefits for lack of a reasonable basis to delay payment. East Penn answered, denying that Foster's second surgery was causally related to her initial work injury and thus, it was not required to pay medical bills or the temporary benefits associated with that surgery. East Penn also requested a credit because it paid permanent partial disability benefits[7] (PPD) on June 20, 2018. The parties agreed Foster was off work from January 25, 2018 until April 12, 2018 because of the second, February 2018 surgery.

A hearing before the deputy commissioner was held in February 2019. In the joint hearing report filed by the parties, they agreed that permanent disability and the entitlement to permanent disability benefits were not yet ripe because Foster was not at MMI. Under the section "credits against any award," neither party identified a disputed issue to consider. Finally, the report noted Foster believed she was entitled to penalty benefits because East Penn had no

---

[6] "Temporary total disability compensation benefits and healing-period compensation benefits are made to partially reimburse the employee for the loss of earnings while the employee is recuperating from the condition the employee has suffered." *Clark v. Vicorp Rests., Inc.*, 696 N.W.2d 596, 604–05 (Iowa 2005); *cf.* Iowa Code § 85.33(2) (2018) (defining "temporary partial disability" as a "condition of an employee for whom it is medically indicated that the employee is not capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, but is able to perform other work consistent with the employee's disability"). "Temporary total disability compensation benefits and healing-period compensation benefits refer to the same condition." *Clark*, 696 N.W.2d at 604.

[7] Compensation for a "permanent partial disability" begins "when it is medically indicated that maximum medical improvement from the injury has been reached and that the extent of loss or percentage of permanent impairment can be determined by use of the guides to the evaluation of permanent impairment." Iowa Code §85.34(2).

reasonable basis to deny healing period benefits for her second surgery and failed to contemporaneously communicate the basis of its denial as required by Iowa Code section 86.13.

In the arbitration decision, the deputy commissioner determined that Dr. Boulden's opinion that the second surgery was not related to Foster's employment with East Penn did not outweigh the other three experts who had physically examined Foster and found it was related. Therefore, the deputy commissioner found East Penn responsible for all medical expenses and TTD benefits from January 25 until April 12, 2018 as related to her second surgery and allowed no credit for the PPD benefits already paid. The deputy commissioner assessed penalty benefits for the delay in payment. East Penn appealed the decision to the commissioner, who reviewed the record de novo, adopted the deputy's findings, and affirmed the deputy's conclusions regarding the causal connection between the November 2016 injury and the second surgery. The commissioner also affirmed Foster's entitlement to reimbursement for the medical care and TTD benefits related to the second surgery and the award of penalty benefits for the unreasonable delay in payment of those benefits.

East Penn appealed to the district court for judicial review. East Penn argued that many of the issues were improperly decided over a lack of substantial evidence. The district court affirmed the final agency decision in its entirety. East Penn now appeals from that decision.

## II. Standard of Review.

Our review of agency decision-making is governed by Iowa Code section 17A.19(10). *Burton v. Hilltop Car Ctr.*, 813 N.W.2d 250, 255 (Iowa 2012). "Under

the [Iowa Administrative Procedure] Act, we may only interfere with the commissioner's decision if it is erroneous under one of the grounds enumerated in the statute, and a party's substantial rights have been prejudiced." *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006). One such ground is whether substantial evidence exists to support the findings. Iowa Code § 17A.19(10)(f). "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* § 17A.19(10)(f)(1).

## III. Error Preservation.

In a general statement, East Penn asserts it preserved error in this matter by "timely appealing the district court ruling affirming the Iowa Workers' Compensation Commissioner's Appeal Decision." However, this is an often-used, but incorrect statement of our rules of error preservation. More specifically, Foster maintains East Penn failed to preserve error on issues raised over the delay in benefit payments and the credit it requests.

> It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal. . . . When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal.

*Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002); *see also* Thomas Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 46–48 (2006) ("In actions seeking judicial review of the decision of an administrative body or local board or

commission, the alleged error must have been raised before both the administrative agency and the district court, although it does not necessarily have to be decided by the district court. . . . However error is preserved, it is not preserved by filing a notice of appeal."). These rules apply to appeals from agencies as well, though with nuances to account for procedural differences. *See, e.g.*, *Boehme v. Fareway Stores, Inc.*, 762 N.W.2d 142, 146 (Iowa 2009) (determining the commissioner's finding is a ruling while a deputy's is not); *see also Wal-Mart Stores v. Johnson*, No. 10-0358, 2011 WL 227641, at *2–3 (Iowa Ct. App. Jan. 20, 2011) (discussing error preservation from a workers' compensation claim). It is through this framework that we will determine whether each issue below was properly preserved.

## IV. Delay in Benefits and Entitlement to a Penalty.

The commissioner determined that Foster was entitled to penalty benefits because of the delay in East Penn's eventual denial of Foster's claim for the second surgery.[8] Iowa Code section 86.13(4) provides:

> a. If a denial, a delay in payment, or a termination of benefits occurs without reasonable or probable cause or excuse known to the employer or insurance carrier at the time of the denial, delay in payment, or termination of benefits, the workers' compensation commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were denied, delayed, or terminated without reasonable or probable cause or excuse.
> b. The workers' compensation commissioner shall award benefits under this subsection if the commissioner finds both of the following facts:
> (1) The employee has demonstrated a denial, delay in payment, or termination of benefits.

---

[8] All parties concede (1) the November 2016 work injury resulted in the need for the February 2017 surgery and (2) Foster was off work from January 25, 2018 until April 12, 2018 because of the second February 2018 surgery.

(2) The employer has failed to prove a reasonable or probable cause or excuse for the denial, delay in payment, or termination of benefits.

c. In order to be considered a reasonable or probable cause or excuse under paragraph "b", an excuse shall satisfy all of the following criteria:

(1) The excuse was preceded by a reasonable investigation and evaluation by the employer or insurance carrier into whether benefits were owed to the employee.

(2) The results of the reasonable investigation and evaluation were the actual basis upon which the employer or insurance carrier contemporaneously relied to deny, delay payment of, or terminate benefits.

(3) The employer or insurance carrier contemporaneously conveyed the basis for the denial, delay in payment, or termination of benefits to the employee at the time of the denial, delay, or termination of benefits.

Our supreme court has interpreted section 86.13 as follows:

A reasonable cause or excuse exists if either (1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits. A "reasonable basis" for denial of the claim exists if the claim is "fairly debatable."

*Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996). "The claimant must first establish there was a delay in the commencement or termination of benefits. The burden then shifts to the insurer . . . to prove a reasonable cause or excuse for the delay or denial." *City of Davenport v. Newcomb*, 820 N.W.2d 882, 893 (Iowa Ct. App. 2012). East Penn asserts it should not have to pay penalty benefits both because its delay was necessary to investigate the claim and because, as the claim was "fairly debatable," it had a reasonable basis to delay. Error was preserved on this issue as it was raised and ruled upon by the deputy commissioner and then adopted by the commissioner. *See Johnson*, 2011 WL 227641, at *2–3.

*A. Delay Necessary to Investigate.*

East Penn asserts that the record as a whole reflects the delay in paying for Foster's surgery and temporary benefits was necessary to investigate the claim. East Penn contends it had "questions" over Foster's "disability rating, restrictions due to injury, contrary medical reports, and conflicting facts concerning the second surgery's relation to a prior work injury" that required time to investigate. Still, both the deputy commissioner and the district court concluded that there was no evidence of any investigation conducted from February 2018 until East Penn's May letter to Dr. Boulden requesting an IME. Nothing in the record shows that East Penn contacted Dr. Goding or Dr. Kirkland, its initial chosen providers, to obtain details of the nature of the injury and reasons for the surgical recommendation.

To justify its delay of payment, East Penn relies on *Kiesecker v. Webster City Custom Meats, Inc.*, 528 N.W.2d 109, 111 (Iowa 1995). *Kiesecker* states that "[i]t is an unreasonable application of the penalty provision to assume that any delay after the furnishing of the medical evidence is unreasonable. Even after receipt of the medical report, issues regarding percentage of disability may still be fairly debatable." 528 N.W.2d at 111. Still, *Kiesecker* ultimately affirmed the penalty imposed for a ninety-day delay in payment following a "last letter of clarification by the treating doctor." *Id.* at 110–11 ("The commissioner also found that the employer and insurer acted unreasonably in failing to pay permanent partial disability for ninety days after the last letter of clarification by the treating doctor and awarded Kiesecker penalty benefits. . . . We agree with the commissioner's interpretation and application of the penalty provision of section 86.13 and affirm on that issue as well."); *cf. Christensen*, 554 N.W.2d at 261

(allowing as reasonable a two-month delay for investigation from the time of the claim to the *receipt* of an IME). Here, over 120 days passed between Dr. Goding's recommendation for Foster's second surgery and East Penn's letter to Dr. Boulden seeking yet another opinion. Without further evidence of efforts to investigate, this delay in the "name of an investigation" is not reasonable. Substantial evidence shows East Penn did not meet its burden of proving this delay was necessary for its investigation.

To be fair, East Penn mentions other concerns that would require investigation, such as the contrary medical opinions. But while this might point to a case warranting investigation, it does not make the delay in beginning an investigation reasonable. As in the district court and agency decisions, we find substantial evidence in the record that East Penn's investigation excuse was not a legitimate reason to delay in payment over several months. We affirm the agency's ruling on the issue.

*B. Reasonable Basis to Contest the Entitlement to Benefits.*

We turn, then, to the second potential excuse for delay under *Christensen*— the reasonable basis to contest the employee's entitlement to benefits. Typically, the employer's delay, denial, or termination is evaluated by a "fairly debatable" standard—this means "if reasonable minds may differ on the employee's entitlement to benefits, the employer's delay or denial will be deemed reasonable and penalty benefits should not be awarded." *Polaris Indus., Inc. v. Doty*, No. 16-0961, 2017 WL 362005, at *4 (Iowa Ct. App. Jan. 25, 2017) (citing *City of Madrid v. Blasnitz*, 742 N.W.2d 77, 84 (Iowa 2007)). Here, East Penn missed a step. Under Iowa Code section 86.13(4)(c)(3), the employer or insurance carrier must

"contemporaneously convey[] the basis for the denial, delay in payment, or termination of benefits to the employee at the time of the denial, delay, or termination of benefits." In the arbitration decision adopted by the commissioner, the deputy found that "[East Penn] did not communicate any reason for the denial of temporary benefits until June 11, 2018 . . . . Given this record, it is found [East Penn] did not have a reasonable cause or excuse in not paying temporary benefits. A penalty is appropriate."

East Penn admits in its appellate brief that it did not contemporaneously convey to Foster the basis for its delayed decision making or denial. However, it argues that, through the emails exchanged between Foster's counsel and East Penn's, it did provide the basis for its denial and delay.[9] In the only email available in the record from East Penn's to Foster's counsel, sent the same day the request for surgery was made, counsel said only:

> Please hold off on the alt care until I can see what is going on. I just received your records and additional records from the carrier. I'll talk to [the claims representative] and get a status on this, though I disagree with you that the carrier must authorize all care recommended by the treating doctor. I believe there is a Court of Appeals case on that issue.

East Penn points to a number of disputes that might provide for a reasonable basis to contest Foster's claim—namely, whether the injury that the second surgery was meant to fix was truly work related. But these reasons were

---

[9] East Penn also argues that its answers to Foster's petitions for alternate care should have put Foster on notice of the reason for the delay. No legal authority was provided to support a finding that this "notice" was sufficient, and so we do not address the underdeveloped argument. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

not communicated to Foster until the June 11 letter. The email never touched on the specifics of the disputes; at best, it communicated that there could be a dispute. No other evidence in the record reflects the basis for denial or delay was contemporaneously conveyed to Foster. We agree with the commissioner's finding that the reason for the delay and denial was not conveyed contemporaneously to Foster.

As the delay in benefits was not justified by necessary time for investigation or a reasonable basis to contest the claim, penalty benefits were appropriate.

**V. Credit for Past Payment.**

As we affirm the commissioner's imposition of penalty benefits, we move next to determine if East Penn should be granted a credit for the $11,533 payment made to Foster (calculated as a five percent whole body permanent impairment rating over fifty weeks) towards the TTD obligation due under the agency decision. The deputy commissioner and district court analyzed the issue under *Swiss Colony, Inc. v. Deutmeyer*, 789 N.W.2d 129 (Iowa 2010), and Iowa Code section 85.34(5),[10] which address the overpayment of weekly benefits. East Penn asserts the commissioner erred by applying the wrong law to these facts.

In its review, the district court determined that East Penn waived the credit issue because it did not raise any previous payment or potential credit during the arbitration hearing. Foster asserts this issue was not properly preserved for

---

[10] This subsection reads:

> If an employee is paid any weekly benefits in excess of that required by this chapter and chapters 85A, 85B, and 86, the excess paid by the employer shall be credited against the liability of the employer for any future weekly benefits due pursuant to subsection 2, for a subsequent injury to the same employee.

appeal. But, we find the issue was raised in the post-hearing briefs and ruled upon in the arbitration decision adopted by the commissioner, so error has been preserved. *See Johnson*, 2011 WL 227641, at *2–3. Still, East Penn stipulated that Foster was not at MMI and, therefore, PPD was not at issue. As such, the agency determined it was "commendable that defendants paid claimant [PPD] benefits . . . . However, the parties stipulated at hearing claimant was not at MMI and [PPD] benefits were not at issue in this case." The agency went on to provide that East Penn "cite[d] no legal authority to support this proposition."

East Penn argues the commissioner was wrong to use *Deutmeyer* or section 85.34(5) because the $11,533 was a voluntary payment made *after* the TTD payments became due, rather than an overpayment of previously due weekly benefits. Although paid and characterized as PPD payments, East Penn maintains the label is irrelevant and the monies should be applied to the benefits that came due after the payment was made. Contrary to its position, East Penn still has the credit, it would just be applied when later benefits come due in a subsequent injury. And, East Penn is generally underselling the expansive reach of Iowa Code section 85.34(5) following *Deutmeyer*. *See* 789 N.W.2d at 137 ("By using a word with an expansive import, we conclude that section 85.34(5) must be interpreted to apply to all overpayments of benefits, including an overpayment of weekly benefits and not simply an overpayment of the entire benefit award. As a result, Swiss Colony is only entitled to a credit for the overpayments against future benefits for a subsequent injury and not against future benefits for this injury."). Under the law and these facts, we have no alternate pathway to credit the PPD payment here.

East Penn worries that this result will amount to a double payment of benefits to Foster.  However, as Foster is not yet at MMI, we cannot determine that the amount voluntarily paid was duplicative—the issue is not yet ripe.  As the payment was made towards PPD, and the parties have both stipulated that PPD is not yet at issue, we affirm the agency's finding that East Penn is "not due a credit for [TTD] benefits based on [PPD] benefits paid."

## VI. Conclusion

Considering the record viewed as a whole, we find there is substantial evidence to support the agency decision.  Thus, we affirm the district court's affirmance of the agency's finding that Foster is entitled to penalty benefits and that no credit should be given to East Penn for past payments.

**AFFIRMED.**