NATIONAL UNDERGROUND STORAGE and Continental Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (DUROCHIA), Respondent.

NATIONAL UNDERGROUND STORAGE and PMA Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (DUROCHIA), Respondent.

NATIONAL UNDERGROUND STORAGE and American Motorists Insurance Company (Kemper), Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (DUROCHIA), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Nov. 18, 1994.

Decided May 15, 1995.

Wiliam S. Evans, for petitioner, Nat. Underground Storage and Continental Ins. Co.

Richard E. Lafferty, for petitioner, Nat. Underground Storage and PMA Ins. Co.

Michael D. Sherman and Rhonda A. Rudman, for petitioner American Motorist Ins. Co. (Kemper Group).

Bruce E. Rende, for respondent Northbrook Property and Cas. Ins. Co. (Durochia).

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Before the Court is a petition for review from a decision of the Workmen's Compensation Appeal Board which reversed an order of a referee, which held that the injuries of Donald Durochia (Claimant) were recurrences of a prior injury.

Claimant was employed by National Underground Storage (Employer) as a driver, hauling boxed records and computer tapes which are stored in Employer's underground facility.[1] On November 27, 1988, Claimant was given a new van to drive, which, unlike previous vans, did not have a bulkhead to separate the cargo area from the driver. Employer had instead installed a partition behind the driver's seat and painted the partition with a Sherwin Williams industrial slate gray oil-based paint. Beginning in December of 1988, Claimant began to experience a rash, which gradually became more severe and progressed to an outbreak of

---

1. Employer's facility is an abandoned mine which has been converted to a storage warehouse for the records of various businesses, such as Mellon Bank.

hives from his waist down. His condition progressed further until, in mid-January 1989, he awoke with swollen feet, face and hands. Claimant generally felt very ill, and had welts across his back, down his arms and across his lower back. He went to see his family physician, Dr. Lepiane, who ordered Claimant to undergo tests at Franklin Medical Center. Claimant informed his supervisor, Mr. Newell, of his condition. Claimant was off from work for several days during this period, and was free from hives and welts while away from the work site, i.e. the truck.

At the end of January, 1989, Claimant entered his truck one morning and instantly got a "prickly" sensation in his eyebrows, in the creases in his forehead, along his sideburns, and along his ears. Claimant testified that at this time it was obvious to him that the paint on the partition was the source of his symptoms. Claimant indicated that he only got the prickly sensation when he was exposed to the paint. Claimant reported his suspicions to Mr. Dowdy, the head of maintenance and a vice president with Employer.

Employer placed a piece of plastic over the painted partition, and this brought Claimant instant relief. The paint was then removed by sandblasting, and although Claimant felt much better and continued to work, in the weeks and months that followed, he still felt ill from time to time and suffered from swelling and welts across the upper back, down his arms, and across his lower back. Claimant testified that the same gray paint that had formerly been used on the partition of his truck, was widely used throughout Employer's underground facility. Since January 1990, he periodically has "attacks" of symptoms, which have continued to the present. The referee noted that Claimant reported to Dr. Mina Patel [2] that from March 1990 until November 1990, he was not exposed to the paint and had no swelling or hives. However, around the end of November 1990, Claimant returned to the work site to return his

mine keys, which he inadvertently took home, and he was exposed to the paint for only about fifteen minutes. The next morning he experienced an eruption of hives and welts, which cleared up after he took antihistamines.

In March 1990, Claimant saw Dr. Kerry, an ear, nose, throat and allergy specialist, and Claimant was referred to the Cleveland Clinic in early April of 1990. He was told to avoid exposure to the paint.

On May 9, 1991, Claimant filed a claim petition alleging that he suffered a work-related injury as a result of his exposure to the gray paint in Employer's facility. Because Claimant has not been disabled from working, his petition only sought reimbursement for medical and travel expenses.

From the time of Claimant's injury to the present, Employer has been insured by various insurance carriers. From January 1, 1988, until December 31, 1988, Employer's insurer was Northbrook Property and Casualty. American Motorist Insurance Co. insured Employer from January 1, 1989, until December 31, 1989. For the calendar years 1990, and 1991, Employer's compensation insurance was carried by Continental Insurance Company and PMA Insurance Company, respectively. Each of these carriers were joined as defendants.

At the hearing before the referee, several doctors testified regarding Claimant's condition. All the doctors agreed that Claimant's symptoms were an allergic reaction to the gray paint that he was initially exposed to in November 1988. However, the only testimony accepted as credible by the referee was that of Dr. John G. Kokales. Dr. Kokales reviewed Claimant's records, and wrote a report on December 5, 1990. In his opinion, Claimant will always have an allergic reaction to the allergens he was exposed to in the paint; any reexposure to similar allergens will always prompt the same response, i.e., swelling, hives, etc. Dr. Kokales also testi-

---

**2.** Dr. Patel's report is dated February, 1991. Her evaluation of Claimant's history was found not credible by the referee.

fied that it was his belief that "any complaint that [Claimant] has at this time or in the further is not a new injury, but just a recurrence of a previously known hypersensitivity reaction." (Finding of Fact No. 13.)

Based on the evidence the referee concluded that Claimant had sustained his burden of proving the existence of a work-related injury of an allergic reaction to the paint. He also concluded that Claimant's allergic reactions were recurrences of the same prior injury. Accordingly, Northbrook, the insurer at the time he first suffered symptoms in December 1988, was liable for Claimant's medical and transportation expenses.

Northbrook appealed to the Board. The Board held that the referee erred as a matter of law by finding that Claimant's symptoms were a recurrence; rather, the Board held, each exposure to the allergen was a new injury, and therefore held that American Motorist was responsible for medical bills incurred during 1989, Continental for medical bills in 1990, and PMA for bills incurred after July 1, 1991.[3] Each of these carriers appealed.[4]

Insurers argue that the Board erred in reversing the order of the referee, because the referee's conclusion that Claimant's hives and swelling were a recurrence of a prior injury was supported by substantial evidence. For the reasons that follow, we will affirm the Board.

■ We note, as we did in *Fidelity Mutual Life Insurance Co. v. Workmen's Compensation Appeal Board (Gourley)*, 126 Pa.Commonwealth Ct. 188, 559 A.2d 84 (1989), that the issue cannot be whether Claimant

suffered a recurrence of a prior injury because Claimant never received benefits

for a prior injury, and, thus, there was no determination of disability that could recur. Instead, the issue is whether the disabling injury was a continuation of an earlier injury. If an injury is a continuation of an earlier injury, then the employer/insurance carrier at the time of the earlier injury is liable for the payment of workmen's compensation benefits.

*Id.* at 192, 559 A.2d at 85–86 (citations and footnote omitted). In *Fidelity*, this Court explicitly rejected the argument that sensitization to a substance is an initial injury, and subsequent manifestations are "recurrences" of that initial injury.

■ Our Supreme Court's opinion in *Pawlosky v. Workmen's Compensation Appeal Board*, 514 Pa. 450, 525 A.2d 1204 (1987), is also instructive in this regard. In *Pawlosky*, the claimant suffered from an asthmatic condition which was exacerbated by his exposure to chemical fumes used in the course of his employment, causing him to suffer fits of coughing and breathing difficulty. The court noted:

In the instant case the medical evidence showed, and the referee found, that the claimant had become totally disabled by the effect of chemical fumes at his workplace on his pre-existent asthmatic or pulmonary disease. According to the medical evidence from both parties those fumes aggravated or irritated the claimant's condition and, with each exposure, would produce an adverse physiological reaction called a bronchospasm, during which he would undergo difficulty in breathing. Given the nature of the bronchospasm, each instance in which such an attack was caused by the chemical fumes would constitute an "injury" ... for purposes of the

---

**3.** The referee found that PMA was an insurance carrier for Employer beginning on January 1, 1991. The Board in its opinion dated September 27, 1993, held PMA liable for Claimant's medical expenses incurred after 1988. PMA petitioned for, and was granted a rehearing. While the Board affirmed its reasoning that each exposure is a new injury, it amended its order, to reflect the fact that PMA did not represent Employer in 1989–90. There is no explanation for the fact

that PMA's liability commences on July 1, 1991, and not January 1, 1991, when its coverage began in either the Board's opinion, or in any of the briefs.

**4.** Each company filed separate appeals which were consolidated by this Court for review. American Motorist, Continental and PMA will collectively be referred to as "Insurers."

Act.[5] That is, the claimant's inhalation of the chemical fumes would bring about an adverse and hurtful change in his system; and such change would cause him to suffer a lessened facility in the natural use of a bodily activity or capability; *i.e.*, breathing. We therefore hold that the adverse effect of the chemical fumes on the claimant's pre-existent asthmatic condition constituted an "injury" within the meaning of section 301(c)(1) of the Act.[6]

*Id.* at 461–62, 525 A.2d at 1210–11. Thus, the reaction itself is an injury, not the underlying condition which causes the reaction.

■ In *Povanda v. Workmen's Compensation Appeal Board (Giant Eagle Markets)*, 146 Pa.Commonwealth Ct. 320, 605 A.2d 478, *petition for allowance of appeal denied*, 533 Pa. 603, 617 A.2d 1276 (1992), the claimant suffered from Reynaud's syndrome, where her hands would swell and bleed when exposed to cold. This swelling and other symptoms were caused by her underlying disease, progressive systemic scleroderma. Essentially following the rationale of *Pawlosky*, this Court held that the referee erred when he held that the claimant had the burden of proving a causal connection between her employment and the underlying disease. Rather, the claimant only had to prove that her work caused an exacerbation of her underlying disease, and caused swelling and bleeding. Thus, for the purposes of compensability under the Act, the underlying condition is not necessarily the injury, but the disability caused by the work-related exacerbation of the underlying condition, is the injury.

Similarly, in *Penntube Plastics Co. v. Workmen's Compensation Appeal Board*, 38 Pa.Commonwealth Ct. 105, 391 A.2d 1141 (1978), the claimant suffered from contact dermatitis as an allergic reaction to polyethylene. We noted that the claimant's allergic susceptibility was a physical condition, that this susceptibility was manifested when she suffered from inflammation due to exposure to polyethylene, and that continued exposure caused exacerbation of the original dermatitis. Thus, claimant's predisposition to an allergic reaction was not an injury under the Act, but the allergic reaction caused by her work was the compensable injury. *See also Gallo v. Workmen's Compensation Appeal Board*, 31 Pa.Commonwealth Ct. 599, 377 A.2d 1014 (1977) (claimant who suffered from outbreaks of contact dermatitis due to an allergic reaction to oils used in yarn processing was only entitled to compensation for the periods when she was actively suffering from dermatitis).

■ Thus, distilling the above cases, the emerging principle is that the initial "injury" for the purposes of the Act is not generally the allergy itself; the allergy is simply the hypersensitivity of the cells of a claimant's body to a specific substance that results in a physical reaction to that substance. Rather, the physical reaction, which is caused by the allergy, is the injury. Each discrete reaction, each outbreak of swelling, welts and hives caused by exposure to a substance, is a separate injury, which completely resolves itself when the exposure ends, even though the claimant still suffers from the underlying hypersensitivity.

■ Claimant's injury, for the purposes of the Act, is the periodic outbreak of swelling and hives, not his hypersensitivity. There was no evidence whatsoever, that Claimant's allergy was *caused* by exposure to paint. Rather, Claimant's *reactions* are caused by the paint. This is clearly what Dr. Kokales testimony meant. He testified that Claimant's symptoms were caused by a reaction to paint; Claimant will always suffer a reaction when exposed to paint. Claimant will always have the underlying allergy; Claimant's response to such exposure will always be the same. In Claimant's testimony, and in the history which he reported to the doctors, he has not suffered from these reactions continuously and has in fact been free of symptoms

---

5. Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1066.

6. 77 P.S. § 411.

for periods of time. There is simply no evidence to support a finding of a recurrence of a prior injury.

Insurers rely on *Swartz v. Workmen's Compensation Appeal Board (Dutch Pantry Restaurant)*, 117 Pa.Commonwealth Ct. 47, 543 A.2d 201 (1988), *petitions for allowance of appeal denied*, 522 Pa. 580, 559 A.2d 40, and 522 Pa. 581, 559 A.2d 41 (1989). *Swartz*, however, is clearly distinguishable from the instant case. In *Swartz*, on May 18, 1984, the claimant suffered a chemical burn from cleaning solutions used in the course of her employment. As a result of this work-related burn she suffered from a skin infection and dermatitis. In July 1984, she also suffered an outbreak of dermatitis. Thereafter, she avoided contact with the detergent, and signed a final receipt. In September 1985, she again came into contact with the detergent and again suffered from dermatitis. During this period of time the employer was covered by two different insurance carriers. This Court held that the claimant continued to suffer soreness from July 1984 up to and including September 1985. Therefore, she had never recovered from the effects of the chemical burn, and the outbreak of severe dermatitis she suffered from in September of 1985 was a recurrence, not an aggravation, and the first insurance carrier was liable for her compensation.

Unlike the case before us now, Swartz's dermatitis was not an allergic reaction to a preexisting hypersensitivity, but was a result of the chemical burn she received at work; the claimant in *Swartz* never completely recovered. *See also Westinghouse v. Workmen's Compensation Appeal Board (Kloshen)*, 167 Pa.Commonwealth Ct. 303, 648 A.2d 83 (1994) (although claimant's abnormal liver function improved when he was no longer exposed to the vapors and fumes which caused his disease to become clinically active, his liver never completely healed; thus, episodes of pain, nausea and vomiting were recurrences of a prior injury, rather than new injuries).

In sum, Claimant had periods of time when he did not suffer from hives and swelling. Moreover, there is no evidence in the record that his hypersensitivity was *caused* by his exposure to paint. Rather, the paint exacerbated a preexisting condition. Thus, every time Claimant suffered an outbreak of hives and swelling due to his exposure to the paint on Employer's premises, he suffered an injury under the Act. The Board's judgment is affirmed.

### ORDER

NOW, May 15, 1995, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.