**ST. LUKE'S HOSPITAL and United Fire & Casualty Co., Appellants,**

v.

**Debra M. GRAY, Appellee.**

No. 98–892.

Supreme Court of Iowa.

Jan. 20, 2000.

John M. Bickel and Nancy J. Penner of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellants.

John Riccolo and David L. Baker of Riccolo & Baker, P.C., Cedar Rapids, for appellee.

' Considered by McGIVERIN, C.J., and LARSON, LAVORATO, SNELL, and CADY, JJ.

LARSON, Justice.

Debra Gray was employed as a registered nurse at St. Luke's Hospital in Cedar Rapids when she developed symptoms of latex allergy. She eventually had to quit her job. She filed a workers' compensation claim against St. Luke's on the ground she had suffered an injury on the job. She received an award of benefits and St. Luke's Hospital and its insurer, United Fire and Casualty Company (St. Luke's), appealed. We affirm.

## I. Facts and Prior Proceedings.

Gray began working at St. Luke's as a registered nurse in 1988. In April 1993 she began noticing symptoms of latex allergy. She went to see Dr. Richard Zeaske, an allergist who referred her to Dr. Loren W. Hunt at the Mayo Clinic. Dr. Hunt's examination confirmed a latex allergy. Dr. Hunt recommended Gray modify her work environment, avoid latex products, and have "latex allergy" written on her medical records.

Gray attempted to change her work environment but finally decided she was unable to work with patients because of her allergy. She left St. Luke's on March 20, 1994, and began to work for an insurance company in a job that did not involve contact with latex. In Dr. Zeaske's opinion, Gray has an underlying predisposition to latex allergy, with increased exposure to latex at St. Luke's increasing the symptomatology. He recommended Gray not work in any setting involving the use of latex products.

In January 1995 Gray filed a petition for workers' compensation benefits related to a May 1990 cervical spine injury (not at issue on this appeal) as well as her latex injury. An arbitration decision was filed in September 1996. A deputy industrial commissioner found Gray had "contracted a latex allergy due to latex exposure at work" and that she had suffered a permanent partial disability. The deputy found Gray was thirty-five percent industrially disabled as a result of the latex injury and ordered St. Luke's to pay benefits accordingly. St. Luke's appealed the arbitration decision as it related to the latex-allergy injury. The industrial commissioner affirmed, and on judicial review, the district court affirmed the agency's ruling.

## II. Scope of Review.

▄▄▄ Our review of decisions by the industrial commissioner is on error, not de novo. *Gates v. John Deere Ottumwa Works,* 587 N.W.2d 471, 474 (Iowa 1998). This court, like the trial court, is bound by the agency's factual findings, so long as they have substantial support in the record. *Id.; see* Iowa Code § 17A.19(8)(f) (1993). Evidence is substantial if a reasonable mind would accept it as adequate to reach the given conclusion. *Dunlavey v. Economy Fire & Cas. Co.,* 526 N.W.2d 845, 849 (Iowa 1995).

▄▄▄ In reviewing the industrial commissioner's findings of fact in workers' compensation proceedings, the question is not whether the evidence might support a different finding, but whether it supports the findings actually made. *Kiesecker v. Webster City Custom Meats, Inc.,* 528 N.W.2d 109, 110 (Iowa 1995). The industrial commissioner weighs the evidence, and the court should broadly and liberally apply those findings in order to uphold, rather than defeat, the industrial commissioner's decision. *Id.* at 111.

## III. Summary of the Issues.

St. Luke's raises three issues: (1) whether the industrial commissioner and

the district court erred in applying Iowa Code chapter 85 (workers' compensation injuries) instead of chapter 85A (industrial disease), (2) whether substantial evidence supports the finding that Gray's latex injury was caused by her employment, and (3) whether the evidence supports a thirty-five percent industrial disability rating.

## IV. *The Appropriate Chapter to be Applied.*

■ St. Luke's argues that the latex allergy is compensable, if at all, as an industrial disease under chapter 85A and not as an "injury" under chapter 85. However, St. Luke's did not raise this until the matter had been appealed to the industrial commissioner. On appeal, the commissioner ruled that St. Luke's had waived this issue because it had not raised it in the parties' prehearing report as required by the agency's rules. Further, the commissioner concluded that to allow St. Luke's to raise the claim for the first time on appeal would constitute unfair surprise and prejudice to Gray. The district court agreed.

■ Our administrative code establishes a prehearing procedure in which the industrial commissioner or deputy may order the parties to confer, in order, among other things, to state and simplify the factual and legal issues to be determined. Iowa Admin. Code r. 873—4.20(5) (1997). St. Luke's did not raise chapter 85A as an issue in that manner, and the commissioner therefore did not consider it. Our review of contested case decisions is limited to those questions considered by the agency. *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688 (Iowa 1994).

■ We agree with the industrial commissioner and the district court that St. Luke's waived its argument that chapter 85A was the proper chapter under which to proceed. The issue remains, however, whether chapter 85 applies. St. Luke's argues that a latex allergy, as a matter of law, is not an injury; therefore, it cannot be compensated under chapter 85.

The commissioner found that Gray's exposure to latex triggered an underlying latex allergy that resulted in a work-related injury. This allergy caused itching, swelling, edema of the eyelids, sneezing, nasal congestion, coughing, tightness in the chest, shortness of breath, and wheezing. Her reaction to latex was so severe that she was advised to avoid contact with latex and to not work in any setting in which avoidance of latex products was not possible.

We have apparently never considered allergy reactions in the context of a workers' compensation case. One case, *Doerfer Division of CCA v. Nicol*, 359 N.W.2d 428 (Iowa 1984), involved a claimant who had developed allergic contact dermatitis from contact with various substances in the workplace. The claimant sought compensation benefits, alleging an injury. *Doerfer Div. of CCA*, 359 N.W.2d at 431. The employer cross-petitioned, alleging the claimant's condition was an occupational disease, not an injury. *Id.* The commissioner ruled it was an occupational disease, and on appeal that was not an issue. Therefore, we have never ruled on the issue of whether allergic reactions may be considered injuries under Iowa Code chapter 85. We have, however, adopted an expansive definition of injury:

> "A personal injury, contemplated by the Workmen's Compensation Law, obviously means an injury to the body, *the impairment of health,* or a disease, not excluded by the act, which comes about, not through the natural building up and tearing down of the human body, but because of *a traumatic or other hurt or damage to the health* or body of an employee.... The injury to the human body here contemplated must be something, whether an accident or not, that acts extraneously to the natural processes of nature, and thereby impairs the health, overcomes, injures, interrupts, or destroys some function of the body, or

otherwise damages or injures a part or all of the body. This is the personal injury contemplated by ... the ... Code...."

*Dunlavey,* 526 N.W.2d at 850–51 (quoting from *Almquist v. Shenandoah Nurseries, Inc.,* 218 Iowa 724, 732, 254 N.W. 35, 39 (1934) (citations omitted)).

Several authorities have recognized allergies as injuries for purposes of workers' compensation.

> Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.

1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 9.02[1], at 9–17 to 9–18 (1999) (footnotes omitted). One of the conditions mentioned is allergy. *Id.* § 9.02[3], at 9–19 to 9–20.

*Webb v. New Mexico Publishing Co.,* 47 N.M. 279, 141 P.2d 333 (1943), involved a workers' compensation claim by a printer for a publishing company who was highly allergic to the type of soap provided by the employer. *Webb,* 141 P.2d at 334–35. The New Mexico Supreme Court found this to be a compensable injury, stating:

> His duties required him to wash his hands to prevent soiling the products of his labor. Except for his idiosyncrasy, it is true, he would not have suffered an injury, but the same may be said of a workman who, but for a defective physical condition, would have withstood the strain of his ordinary labors, yet suffered a compensable injury because of an exertion too great for one in his condition of health. Such are workmen who have heart afflictions, tuberculosis, etc., whose deaths result from strains or labor too heavy for their strength.

*Id.* at 344.

*Hardin's Bakeries, Inc. v. Ranager,* 217 Miss. 463, 64 So.2d 705 (1953), involved a baker who became disabled as a result of a rash on his hands and arms caused by an allergy to mittens used in handling hot pans of bread. *Hardin's Bakeries,* 64 So.2d at 706. The issue was whether this condition was the result of an "occupational disease" or "accidental injury." The court held it was an injury for purposes of workers' compensation. *Id.* at 710. In reaching that conclusion, the court quoted from *Vogt v. Ford Motor Co.,* 138 S.W.2d 684 (Mo.Ct.App.1940), a case involving a claimant who suffered from asthma. The court said:

> "The proof does not bear any of the earmarks of an occupational disease; in this particular factory, no one else was ever similarly affected; asthma is not a disease, which from the common experience of humanity, is known to result to others engaged in the same work; in other words, the disease is not a usual concomitant or result of the work he was doing.... It cannot be attributed to the occupation because it is not a disease which men in the occupation are subject to contract; it is not a disease known to be incidental to that particular employment."

*Hardin's Bakeries,* 64 So.2d at 708–09 (quoting *Vogt,* 138 S.W.2d at 687).

Other jurisdictions also recognize the compensability of allergies as an injury under workers' compensation law. In *Bidermann Industries Corp. v. Peterson,* 655 So.2d 997 (Ala.Civ.App.1994), the claimant was a seamstress who experienced allergic contact dermatitis at work. *Bidermann,* 655 So.2d at 998. When she was away from work, her condition improved. When she returned to work, it worsened. *Id.* at 999. The court found that claimant did not suffer from an occupational disease; rather her condition was compensable as an "accident" under the workers' compensation act. *Id.*

Pennsylvania has recognized allergic *reactions* as compensable as an injury, even though the underlying *allergy* would not be considered an injury. *See National*

*Underground Storage v. Workmen's Compensation Appeal Bd. (Durochia)*, 658 A.2d 1389, 1392–93 (Pa.Cmwlth.Ct.1995). *National Underground Storage* involved an employee who was allergic to a paint used at his workplace. *Id.* at 1390–91. The court concluded:

Claimant's injury, for the purposes of the Act, is the periodic outbreak of swelling and hives, not his hypersensitivity. There was no evidence whatsoever, that Claimant's allergy was caused by exposure to paint. Rather, Claimant's reactions are caused by the paint....

. . . .

In sum, Claimant had periods of time when he did not suffer from hives and swelling. Moreover, there is no evidence in the record that his hypersensitivity was caused by his exposure to paint. Rather, the pain exacerbated a preexisting condition. Thus, every time Claimant suffered an outbreak of hives and swelling due to his exposure to the paint on Employer's premises, he suffered an injury under the Act.

*Id.* at 1393–94.

Under our broad definition of "injury," as illustrated by *Dunlavey,* and the authorities discussed above, we believe the commissioner and the district court were correct in holding that allergic reactions may be considered injuries under chapter 85.

### V. Did the Injury Arise Out of and in the Course of Gray's Employment?

St. Luke's argues that whatever Gray's condition is it was not caused by her employment. To receive workers' compensation benefits Gray must show by a preponderance of the evidence that the injury arose out of and in the course of her employment. *Quaker Oats Co. v. Ciha,* 552 N.W.2d 143, 150 (Iowa 1996); *see* Iowa Code § 85.3(1).

A. An injury occurs "in the course of employment" when it is "within the period of employment at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto." *Quaker Oats Co.,* 552 N.W.2d at 150 (citations omitted). St. Luke's does not dispute the proof on the question of whether the latex allergy occurred in the course of her employment. It does, however, dispute the claimant's showing on the "arises out of" element, an issue treated in the following section.

B. An injury "arises out of" employment if there is a causal connection between the employment and the injury. *Bailey v. Batchelder,* 576 N.W.2d 334, 338 (Iowa 1998). Whether an injury has a direct causal connection with the employment or arose independently thereof is ordinarily established by expert testimony, and the weight to be given such an opinion is for the finder of fact. *Dunlavey,* 526 N.W.2d at 853. Dr. Hunt observed that Gray's symptoms were work-related and suggested modification of her work environment. Dr. Zeaske stated:

[Gray] did have ... a predisposition to latex, with increasing exposure to latex she had increasing symptomatology. The increased exposure came in connection with her employment at St. Luke's Hospital. It is my opinion that the symptoms that she was having at the time were a direct result of the exposure to latex at work. It is known that approximately 1 percent of the general non-atopic population is estimated to have some latex allergy, whereas, 7 to 10 percent of health care workers are estimated to have this problem.

Relying on the medical evidence, the commissioner determined that Gray's injury arose out of her employment with St. Luke's, and substantial evidence supports that finding.

### VI. The Amount of Benefits.

St. Luke's challenges the award of thirty-five percent industrial disability on

the basis the award lacks substantial support in the record. The main thrust of its argument is that the disability finding ignores the fact that Gray currently has a job, at higher pay, and ignores the existence of nursing-related jobs in settings other than hospitals or doctors' offices.

 Our workers' compensation law divides permanent partial disability into either a scheduled or unscheduled loss. *See* Iowa Code § 85.34(2). Specific scheduled disabilities are determined by the functional method, that is, by determining the impairment of the employee's body function. *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 15 (Iowa 1993); *see* Iowa Code § 85.34(2)(a)-(t). Compensation for scheduled disabilities is not based on the claimant's earning capacity. *Sherman v. Pella Corp.*, 576 N.W.2d 312, 320 (Iowa 1998). Unscheduled losses, on the other hand, are compensated by determining the employee's industrial disability. *Mortimer*, 502 N.W.2d at 15; *see* Iowa Code § 85.34(2)(u). Industrial disability measures an injured worker's lost earning capacity. *Myers v. F.C.A. Servs., Inc.*, 592 N.W.2d 354, 356 (Iowa 1999).

 A latex allergy injury is an unscheduled injury. *See* Iowa Code § 85.34(2). Therefore, it is compensated by determining lost earning capacity. "This inquiry cannot be answered merely by exploring the limitations on [a claimant's] ability to perform physical activity associated with employment. It requires consideration of all the factors that bear on [the claimant's] actual employability." *Second Injury Fund v. Hodgins*, 461 N.W.2d 454, 456 (Iowa 1990) (quoting *Guyton v. Irving Jensen Co.*, 373 N.W.2d 101, 104 (Iowa 1985)). These factors include a consideration of not only the claimant's functional disability, but also her age, education, qualifications, experience, and ability to engage in similar employment. *Myers*, 592 N.W.2d at 356. The focus is not solely on what the worker can and cannot do; the focus is on the ability of the worker to be gainfully employed. *Id.* A

showing of actual reduction in the employee's earnings is not always necessary to demonstrate an injury-caused reduction in earning capacity. *Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824, 831 (Iowa 1992).

While Gray will be employable in other settings, as St. Luke's argues, the commissioner found that she is no longer able to engage in many positions similar to what she had at St. Luke's and has therefore suffered a loss of earning capacity. Substantial evidence supports that conclusion and the award of thirty-five percent industrial disability.

**AFFIRMED.**