# IN THE COURT OF APPEALS OF IOWA

No. 15-0043
Filed February 10, 2016

**ANNETT HOLDINGS, INC.,**
        Petitioner-Appellant,

**vs.**

**ANTHONY ROLAND,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Arthur E. Gamble,

Judge.


        An employer appeals the district court's judicial review decision affirming

the workers' compensation commissioner's alternate medical care ruling.

**AFFIRMED.**



        Sasha L. Monthei of Scheldrup, Blades, Schrock & Smith, P.C., Cedar

Rapids, for appellant.

        Nicholas L. Shaull and Christopher D. Spaulding of Spaulding, Berg &

Schmidt, P.L.C., Des Moines, for appellee.



        Heard by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Annett Holdings, Inc. appeals the district court's judicial review decision, which affirmed the alternate medical care decision of the workers' compensation commission (the agency). Annett Holdings claims the district court erred in concluding substantial evidence supported the agency's determination that the medical care the employer offered to Roland in Des Moines was unreasonable and unduly inconvenient. In addition, Annett Holdings claims the district court erred in affirming the agency's decision that the "Memorandum of Understanding and Consent" Roland signed when he started work with Annett Holdings violated Iowa Code section 85.18 (2013).

## I. Background Facts and Proceedings.

Anthony Roland works as an over-the-road truck driver for Annett Holdings. He injured his right elbow in Indiana on March 4, 2014, and he initially received medical care there. He was released to light-duty work, and pursuant to a memorandum of understanding,[1] Roland traveled to Des Moines to perform

---

[1] The document Roland signed when he started work in October 2013 provided, in part:

> Consistent with the Iowa Supreme Court's decision in *Neal v AHI*, as a condition of your employment with the Company, you acknowledge and agree that the Company may require you to temporarily relocate to Des Moines, Iowa for modified duty work in the event you suffer a work injury. Iowa Law allows Annett Holdings to suspend workers compensation benefits to an injured worker if an injured worker fails to accept and work in the modified duty position offered by Annett Holdings, Inc. Iowa Code [§] 85.33.
>
> . . . .
>
> Because drivers agree to be away from home as an essential function and an agreed upon term of their employment with Annett Holdings, injured workers are expected to temporarily relocate and perform their modified duty work in Des Moines, Iowa, irrespective of your state of residence. The temporary relocation will include staying away from your home for up to two weeks at a time. By accepting employment with the Company, you acknowledge there is nothing you are aware of

modified-duty work. When conservative treatment in Des Moines failed to address the injury, Annett Holdings authorized Roland to see John R. Payne, M.D., an orthopedic surgeon located in Anniston, Alabama, near Roland's residence. Dr. Payne performed surgery on Roland's elbow on May 9, 2014. Following surgery, Roland was taken off work and received a referral for physical therapy, which initially occurred in Alabama. When Roland was once again released to light-duty work, Annett Holdings had him temporarily relocate to Des Moines to perform modified-duty work and provided him with physical therapy in the hotel where he was staying.

Dissatisfied with the physical therapy being provided in the hotel in Des Moines, Roland filed a petition for alternate medical care with the agency on June 5, 2014, requesting his physical therapy be provided in Alabama. On June 18, 2014, the agency granted Roland's petition, concluding, "Treatment offered 897 miles from Roland's residence is unreasonable and unduly inconvenient for claimant." The deputy went on to provide,

> The agreement signed by Roland is contrary to the law and case law of Iowa because it attempts to use an agreement to relieve the employer from part of its liability to provide reasonably suited

which would prevent you from temporarily relocating to Des Moines, Iowa for up to two weeks at a time to perform modified duty work assignments in the event you suffer a work injury.
. . . .
Annett Holdings will provide temporary housing for the modified duty employee at no expense to the employee and will provide any necessary transportation to and from the temporary housing and work, if necessary. If ongoing medical care is required by the medical condition of the injured worker, Annett Holdings will coordinate the modified duty work schedule with medical appointments to ensure the least amount of disruption between the two. Des Moines, Iowa has world-class facilities and medical professionals available and is an ideal location for ongoing medical care.

treatment for the injury without undue inconvenience to the employee under Chapter 85. The agreement appears to be an attempt to either avoid or eliminate both the "reasonable" and "undue inconvenience" clauses in Iowa Code section 85.27(4). . . . Use of any device as an attempt to relieve the employer from liability under workers' compensation law is prohibited by Iowa Code section 85.18.

Annett Holdings filed a petition for judicial review with the district court, challenging the agency's decision. After hearing arguments from both sides, the district court affirmed the agency's decision. The district court agreed with Annett Holdings that the issue of the validity of the offer of light-duty work in Des Moines as "suitable work" under section 85.33(5) was not properly before the agency in the alternate medical care proceeding. But the district court also determined the agency properly addressed whether the memorandum of understanding was a contract that operated to relieve Annett Holdings, in whole or in part, of its duty to provide reasonable medical care without undue inconvenience to Roland. While Annett Holdings argued it did not force Roland to travel 897 miles for treatment, instead only providing him treatment while he was 897 miles away from home for light-duty work, the district court determined "[t]he deputy rightly avoided the circular dilemma of trying to answer which came first, the light duty or the physical therapy." The district court noted that without the memorandum of understanding Annett Holdings could not compel Roland to travel to Des Moines. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 525 (Iowa 2012) (noting substantial evidence supported the agency's determination that the offer of light duty work 387 miles from the injured worker's home was not "suitable work" for an over-the-road truck driver, but also noting there was no evidence the injured

worker agreed as a condition of employment to any relocation the company may require). The district court concluded,

> Since Roland lives in Alabama, where he was recovering from an authorized surgery, the employer cannot legally use this [memorandum of understanding] as a device to compel Roland to relocate 897 miles away from Anniston where reasonable medical care in the form of physical therapy can be provided without undue inconvenience.

The district court also concluded substantial evidence supported the agency's conclusion that the treatment offered in Des Moines was not reasonable and was unduly inconvenient to Roland. The district court noted the surgery occurred in Alabama, as did the initial physical therapy. The court agreed with the agency that Annett Holdings unreasonably interfered with Dr. Payne's prescription for an electric cooling machine because the travel to Des Moines prevented Roland from using the machine. Finally, the district court concluded substantial evidence supported the conclusion that the therapy provided in Alabama was medically superior to the care offered in the hotel in Des Moines.

Annett Holdings appeals.

## II. Scope and Standard of Review.

We review judicial review cases for correction of errors at law. Iowa R. App. P. 6.907. Iowa Code section 17A.19(10) controls our review, and we apply those statutory standards to determine whether we reach the same conclusions as the district court. *Neal*, 814 N.W.2d at 518. If the conclusions are the same, we affirm; otherwise, we reverse. *Id.*

The particular standard of review from section 17A.19(10) that we apply depends on the issues raised on appeal. *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). "Because of the widely varying standards of review, it is 'essential for counsel to search for and pinpoint the precise claim of error on appeal.'" *Id.* (citation omitted).

Here, Annett Holdings first challenges the agency's ruling granting alternate medical care to Roland. The main thrust of Annett Holdings's claim is that there was not substantial evidence to support the agency's decision. When the challenge is to the substantial evidence to support the agency's decision, our review is governed by Iowa Code section 17A.19(10)(f). Factual findings are clearly vested in the discretion of the agency, and "we defer to the commissioner's factual determinations if they are based on 'substantial evidence in the record before the court when that record is viewed as a whole.'" *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009) (quoting Iowa Code § 17A.19(10)(f)). Substantial evidence is defined as "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* (quoting Iowa Code § 17A.19(10)(f)(1)). "[T]he question before us is not whether the evidence supports different findings than those made by the commissioner, but whether the evidence 'supports the findings actually made.'" *Id.* (quoting *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 649 (Iowa 2000)).

To the extent Annett Holdings challenges the ultimate conclusion reached by the agency, our review is to determine whether the agency's decision is "irrational, illogical, or wholly unjustifiable" under section 17A.19(10)(m) because a challenge to the ultimate conclusion is a challenge to the agency's application of law to the facts. *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 259 (Iowa 2012).

Annett Holdings also claims the agency erred in reaching a decision on whether the memorandum of understanding comports with Iowa law. It claims this was not a proper consideration for the agency in the alternate medical care proceeding. This challenge implicates the agency's interpretation of the law, and we therefore review the agency's decision under Iowa Code section 17A.19(10)(c)—"Based upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency."

## III. Substantial Evidence.

An injured worker can seek an order from the workers' compensation commission when that worker is not satisfied with the medical care being provided by the employer for a work injury. *See* Iowa Code § 85.27(4) ("If the employee has reason to be dissatisfied with the care offered, the employee should communicate the basis of such dissatisfaction to the employer, in writing if requested, following which the employer and the employee may agree to alternate care reasonably suited to treat the injury. If the employer and employee cannot agree on such alternate care, the commissioner may, upon application and reasonable proofs of the necessity therefor, allow and order other care.").

The statute outlines the expedited procedure through which the agency decides disputes over medical care. *See id.*[2] The employee bears the burden to prove that the care authorized by the employer is unreasonable. *R.R. Donnelly & Sons v. Barnett*, 670 N.W.2d 190, 195 (Iowa 2003). "If the treatment provided by the employer is not prompt, not 'reasonably suited to treat the injury,' or is unduly inconvenient to the employee, the commissioner has authority to order the alternate care." *Id.* (quoting *West Side Transp. v. Cordell*, 601 N.W.2d 691, 695 (Iowa 1999)).

Here, the agency determined alternate care was warranted after finding Roland lived 897 miles away from Des Moines, the physical therapy provided in Des Moines was inferior to the physical therapy provided in Alabama, and the required travel to Des Moines interfered with Roland's medical care by preventing him from using the prescribed cooling machine. Annett Holdings challenges the factual support for each of these findings and also claims the agency should not have disregarded the expert reports it submitted as evidence to establish that the care provided in Des Moines was the same as the care provided in Alabama.

---

[2] Iowa Code 85.27(4) provides, in part:

> An application made under this subsection shall be considered an original proceeding for purposes of commencement and contested case proceedings under section 85.26. The hearing shall be conducted pursuant to chapter 17A. Before a hearing is scheduled, the parties may choose a telephone hearing or an in-person hearing. . . . The workers' compensation commissioner shall issue a decision within ten working days of receipt of an application for alternate care made pursuant to a telephone hearing or within fourteen working days of receipt of an application for alternate care made pursuant to an in-person hearing.

The Iowa Administrative Code rule 876-4.48 provides further guidelines governing the alternate medical care proceeding, including the form of the request, the evidence permitted, and the restrictions on hearing briefs.

Roland's attorney asserted in the petition for alternate medical care and during the hearing that the distance between Roland's home and Des Moines was 897 miles. Annett Holdings did not dispute this number. However, Annett Holdings asserts it did not force Roland to come to Des Moines solely for medical treatment but only provided him treatment when he was in Des Moines for modified-duty work pursuant to the memorandum of understanding. Thus, Annett Holdings claims the medical care provided in Des Moines was both reasonable and not unduly inconvenient. Setting aside the distance between Roland's home and the physical therapy being provided in Des Moines, we still must determine whether substantial evidence supports the agency's determination that Roland satisfied his burden of proof to justify alternate care in Alabama.

Roland testified the physical therapy in Des Moines was provided in the exercise room of the hotel where he stayed while in town for modified duty. There was no specialized physical therapy equipment in the exercise room, and the physical therapist did not bring any other equipment to the hotel to assist in the therapy. There was not even a chair for Roland to sit in while he used a heating pad on his elbow during the therapy sessions; Roland testified he had to sit on the floor. In contrast, Roland used a variety of equipment in his therapy sessions in Alabama including a hand bicycle, weight balls, clips for finger dexterity, and shock therapy to increase blood flow to the arm.

Roland testified the therapy sessions were sixty to ninety minutes long in Alabama, and lasted on average only about thirty minutes in Des Moines. He

noticed considerably less swelling and improved mobility following physical therapy in Alabama compared to the therapy offered in Des Moines. He testified following therapy in Alabama he was able to brush his teeth and hold a spoon in his right hand.

Roland was unable to use the prescribed cooling machine when he traveled between Des Moines and Alabama because the machine could not be taken on a plane, and it could not be used in a vehicle because the machine required electricity. Roland testified the surgeon emphasized the need to keep swelling down because swelling could cause damage to the arm. Annett Holdings asserts in its brief Roland did not raise his concerns regarding the cooling machine until he filed the alternate medical care petition. However, Roland testified he informed Annett Holdings of the need for the cooling machine at the time he was asked to travel. While Annett Holdings also points out in its appellate brief that there are many adapters that can be used in vehicles to run electrical equipment, Roland was not provided or even offered this equipment when he informed Annett Holdings of the need for the cooling machine during travel. Instead, he was told to stop frequently to obtain ice on the 897-mile road trip.

At the alternate medical care hearing, Annett Holdings offered expert opinions that the therapy Roland was receiving in Des Moines was identical to the therapy he was receiving in Alabama. The agency disregarded the testimony from these experts because there was no indication in the record to show upon what information the opinions were based, and neither expert had the benefit of

Roland's description of the therapies provided in both locations. It is up to the agency to determine the credibility of witnesses. *E.N.T. Assocs. v. Collentine*, 525 N.W.2d 827, 830 (Iowa 1994). In addition, we evaluate whether substantial evidence supports the agency's decision according to the witnesses whom the agency believed. *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). Accepting the credibility of Roland and disregarding the expert opinions offered by Annett Holdings as we must, we conclude substantial evidence supports the agency's decision to award alternate medical care to Roland. The evidence supports the conclusion that the physical therapy provided in Des Moines was not reasonably suited to treat the injury.

## IV. Section 85.18.

Next, Annett Holdings asserts neither the agency nor the district court should have addressed the legal validity of the memorandum of understanding. Annett Holdings maintains the memorandum of understanding was only relevant in the alternate medical care proceeding to the extent that it factually explained why Roland was receiving medical care in Des Moines. It thus claims it was an error for the agency and the district court to assess the legal validity of the memorandum of understanding as that issue was not germane to the alternate medical care proceeding.

Annett Holdings in one breath relies on the memorandum of understanding to justify providing medical care to Roland in Des Moines, 897 miles away from his home, and in another breath asserts the validity of the memorandum of understanding should not have been addressed in the alternate

medical care proceeding. It cannot have it both ways. By relying on the memorandum of understanding to demonstrate the reasonableness and convenience of the care being provided, Annett Holdings puts into issue the legal validity of the memorandum of understanding. The district court correctly noted the issue of whether alternate care should be ordered could not be decided in a vacuum in light of Annett Holding's use of the memorandum of understanding to justify Roland's presence in Des Moines where the challenged care was provided. In addition, the memorandum of understanding specifically addressed the issue of medical care being provided to injured workers who are compelled to relocate to Des Moines for their convalescence. The memorandum of understanding provided:

> If ongoing medical care is required by the medical condition of the injured worker, Annett Holdings will coordinate the modified duty work schedule with medical appointments to ensure the least amount of disruption between the two. Des Moines, Iowa has world-class facilities and medical professionals available and is an ideal location for ongoing medical care.

Thus, we conclude that under the facts of this case and the arguments advanced by Annett Holdings neither the agency nor the district court erred in considering the legal validity of the memorandum of understanding as part of the alternate medical care proceeding.

Both the district court and the agency concluded the memorandum of understanding violated Iowa Code section 85.18, which provides, "No contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided." The employer is required under section 85.27(4) to provide prompt medical treatment

that is "reasonably suited to treat the injury without undue inconvenience to the employee." The agency determined the memorandum of understanding was used to either avoid or eliminate Annett Holdings's obligation under both "reasonable" and "undue inconvenience" clauses in section 85.27(4). The district court agreed with this conclusion and affirmed the agency's decision.

Annett Holdings used the memorandum of understanding to compel Roland to relocate to Des Moines from Alabama for modified-duty work. While the memorandum of understanding stated Annett Holdings would coordinate the modified work schedule with Roland's medical appointments "to ensure the least amount of disruption between the two," what resulted in Roland's case was the transfer of care from the physical therapist in Alabama, who had provided treatment to Roland immediately after surgery, to a physical therapist in Des Moines. While Annett Holdings continued to allow Roland to return to Alabama to treat with Dr. Payne, the same accommodation was not provided for Roland's physical therapy appointments. This transfer of care mid-stream was neither convenient nor reasonable. Roland lost the consistency in the physical therapy treatment being provided as he recovered from surgery, he received care not reasonably suited to treat his injury, he had to endure the stress and strain of traveling an 1800-mile round trip to and from Des Moines every two weeks, and he lost the ability to use his medically-prescribed cooling device due to the difficulty it caused with traveling. As applied in this case, we, like the district court, conclude the agency did not err in concluding the memorandum of understanding violated section 85.18.

Because we conclude substantial evidence supports the agency's decision to award alternate medical care to Roland and determine the agency did not err in holding the memorandum of understanding violated section 85.18, we affirm the district court's judicial review decision.

**AFFIRMED.**