# IN THE COURT OF APPEALS OF IOWA

No. 19-0169
Filed January 23, 2020

**LESLIE ANN HARROD,**
     Plaintiff-Appellant,

**vs.**

**ADVANCE SERVICES, INC., and ACE AMERICAN INSURANCE COMPANY,**
     Defendants-Appellees.
_____

Appeal from the Iowa District Court for Buena Vista County, Carl J. Petersen, Judge.

Leslie Harrod appeals the district court order affirming the final decision of the Iowa Workers' Compensation Commission in regard to her claim against her employer Advance Services, Inc. and its insurer Ace American Insurance Company. **AFFIRMED**.

Willis J. Hamilton of Hamilton Law Firm, P.C., Storm Lake, for appellant.

Timothy W. Wegman and Alison E. Stewart of Peddicord Wharton, LLP, West Des Moines, for appellees.

Considered by Tabor, P.J., Greer, J., and Potterfield, S.J.*

Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**POTTERFIELD, Senior Judge.**

Leslie Harrod appeals the district court order affirming the final decision of the Iowa Workers' Compensation Commission in regard to her claim against her employer Advance Services, Inc. and its insurer Ace American Insurance Company. Harrod argues (1) the reviewing deputy's decision to reduce the deputy commissioner's forty percent industrial disability to twenty-five percent industrial disability was not supported by substantial evidence; (2) the reviewing deputy's reversal of the deputy's grant of alternative medical care was not supported by substantial evidence; and (3) the reviewing deputy erroneously reversed the deputy's award of penalty benefits.

## I. Background

Harrod was twenty-two years old at the time of the arbitration hearing. Before working for Advance Services, she worked at various times as a cashier, dietary cook, bait packer, and waitress. At Advance Services, Harrod was employed as a laborer. Her duties included unloading grain trailers and semi-trucks, and cleaning out and repairing grain bins. Harrod testified she had to lift up to sixty pounds as part of her job and rarely had to lift more.

The injury occurred while Harrod was working at Advance Services on September 30, 2013. Harrod was unloading grain trailers when her arms started to go numb. She soon also felt pain in her right shoulder. The pain and numbness became so severe she could not keep unloading grain trailers or even sweep floors.

After appointments with a general practitioner, Harrod began to consult with Dr. Alexander Pruitt, an orthopedist. Harrod was examined by Dr. Pruitt

several times in the following months. Treatment was initially ineffective and Dr. Pruitt was unable to find the cause of her pain. An MRI was taken of Harrod's neck in February 2014. After reviewing the MRI, Dr. Pruitt determined Harrod had minor cervical spondylosis at her C5-C6 and C6-C7 vertebrae.

Dr. Pruitt gave Harrod various injections to help deal with the pain, which ultimately proved ineffective beyond providing her temporarily relief. Harrod continued her treatment with Dr. Pruitt until July 2014. On July 15, Dr. Pruitt opined Harrod's work injury on September 30, 2013, led to spondylosis at her C5-C6 and C6-C7 vertebrae, which caused a disc bulge at C6-C7. Dr. Pruitt concluded Harrod suffered a permanent five percent whole body impairment from the injury and imposed a work restriction of lifting no more than twenty-five pounds. He further informed her that he could no longer help her, because he only specialized in shoulder and knee injuries, not spinal injuries.

On August 26, 2014, Harrod's attorney sent a letter to appellees requesting authorization to see another physician besides Dr. Pruitt. Appellees, through counsel, refused. Harrod's attorney then directed Harrod to undergo an independent medical evaluation with Dr. Sunil Bansal, an occupational medicine physician. Dr. Bansal issued his report on January 7, 2015. After examining Harrod and reviewing her medical records, Dr. Bansal concluded Harrod's injury warranted a permanent fifteen percent whole person impairment. Dr. Bansal also recommended work restrictions of lifting a maximum of twenty-five pounds occasionally and ten pounds frequently with either arm; lifting a maximum of ten pounds over shoulder level, and no frequent over shoulder level activity; and

avoidance of frequent neck motion or placement in a posturally flexed position for periods of time longer than fifteen minutes.

On December 16, 2014, Harrod's attorney contacted appellees and informed them Harrod had not received disability payments from them, which they claim appellees had to send because Dr. Pruitt rated Harrod's permanent disability in July 2014.

Harrod filed her petition seeking workers' compensation benefits from appellees, and the deputy issued his arbitration decision on September 12, 2016. The deputy concluded Harrod suffered a forty percent permanent partial industrial disability from her injury. The deputy further ordered alternative care because, "The claimant is still in pain, and Dr. Pruitt was unable to offer anything that worked, but he was not a spine specialist." Finally, the deputy concluded a penalty payment of $4500 was warranted from appellees' failure to pay benefits on time between July 15 and December 19 because "[n]o excuse was offered for the late payment."

Advance Services and Ace American Insurance appealed, and the commissioner delegated the authority to issue the final agency decision to another deputy commissioner. The reviewing deputy reviewed the record and concluded Harrod's injury warranted a finding of twenty-five percent industrial disability. The reviewing deputy concluded appellees provided reasonable medical care to Harrod and reversed the initial deputy's decision to award penalty benefits. Harrod petitioned for judicial review on July 6, 2018. The district court affirmed the reviewing deputy's ruling on December 31, 2018, and Harrod now appeals.

## II. Standard of Review

"Judicial review of workers' compensation cases is governed by Iowa Code chapter 17A. On our review, we determine whether we arrive at the same conclusion as the district court." *Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015) (citation omitted). "[T]he question on appeal is not whether the evidence supports a different finding than the finding made by the commissioner, but whether the evidence 'supports the findings actually made.'" *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006) (quoting *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 649 (Iowa 2000)).

Whether Harrod suffered a twenty-five percent industrial disability is a mixed question of law and fact. *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 525 (Iowa 2012). We review the commissioner's findings of fact for substantial evidence and we "must engage in a 'fairly intensive review of the record to ensure that the fact finding is itself reasonable.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 499 (Iowa 2003)). As used in chapter 17A, "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1) (2018). But "in considering findings of industrial disability, we recognize that the commissioner is routinely called upon to make such assessments and has a special expertise in the area that is entitled to respect by a reviewing court." *Neal*, 814 N.W.2d at 527. "Because the challenge to the agency's industrial disability determination challenges the agency's application of

law to facts, we will not disrupt the agency's decision unless it is 'irrational, illogical, or wholly unjustifiable.'" *Id.* at 526.

### III. Discussion

For all three claims, Harrod argues the reviewing deputy's decision should not be given more weight than the initial deputy commissioner's decision because the two deputies are "of equal status." But Harrod misconstrues the relationship between the initial deputy's decision and the reviewing deputy's decision. The initial deputy commissioner's decision was "a proposed decision." Iowa Code § 17A.15(3). The commissioner delegated the authority to issue the final agency decision on Harrod's claim to the reviewing deputy. *See id.* § 86.3 (noting "a deputy commissioner shall have the power to issue a final decision as if issued by the agency" when "written delegation of authority to perform specified functions is made by the commissioner"). The reviewing deputy may modify the proposed decision as she felt necessary:

> On appeal from or review of the proposed decision, the agency has all the power which it would have in initially making the final decision . . . . The agency may reverse or modify any finding of fact if a preponderance of the evidence will support a determination to reverse or modify such a finding, or may reverse or modify any conclusion of law that the agency finds to be in error.

Iowa Code § 17.15(3); *see also id.* § 86.24(2) ("In addition to the provisions of section 17A.15, the workers' compensation commissioner may affirm, modify, or reverse the decision of a deputy commissioner or the commissioner may remand the decision to the deputy commissioner for further proceedings."). We review the final agency decision on judicial review, not the proposed decision made by the initial deputy. *Id.* § 17A.19(1) ("A person or party who has exhausted all

adequate administrative remedies and who is aggrieved or adversely affected by any *final* agency action is entitled to judicial review thereof under this chapter." (emphasis added)). Thus, the question before us on judicial review is whether the reviewing deputy's decision was properly supported under the relevant standard of review, not whether the initial deputy's decision was better supported by the record.

### a. Industrial Disability

Harrod first argues the reviewing deputy's decision to reduce the initial deputy's industrial disability determination from forty percent to twenty-five percent was not supported by substantial evidence and was wholly unjustifiable. When assessing industrial disability, the commissioner considers several factors including "functional disability . . . age, education, qualifications, experience, and inability due to injury to engage in the employment for which the claimant is fitted." *St. Luke's Hosp.*, 604 N.W.2d 646 at 653. The reviewing deputy addressed each of these factors. The reviewing deputy noted Dr. Pruitt and Dr. Bansal had different opinions on the extent of Harrod's permanent impairment, but she ultimately concluded Dr. Bansal's opinion was more persuasive because Harrod testified her symptoms became worse after her final appointment with Dr. Pruitt but before she was evaluated by Dr. Bansal. Harrod was twenty-two years old at the time of the hearing before the initial deputy. While Harrod stated she had interest in pursuing further education, the reviewing deputy noted Harrod's inability to complete the Certified Nursing Assistant program she attended after graduating from high school "raise[d] some question as to her likelihood of success in further training."

The reviewing deputy also addressed Harrod's work history both before and after the injury. The reviewing deputy noted Harrod earned her highest wage of $12 per hour at Advance Services while working as a laborer. After her injury, Advance Services placed her in various "light duty" assignment and Harrod independently obtained employment at Hobby Lobby, Rembrandt Enterprises, and the Humane Society. The reviewing commissioner noted that, while Harrod could pass the pre-employment physical examination for working as an egg packager for Rembrandt, "[i]t is unclear based on the record whether claimant would have been physically capable of maintaining this position long-term." Given this evidence, the reviewing commissioner's finding of twenty-five percent industrial disability was supported by the evidence and was not irrational, illogical, or wholly unjustifiable, and we affirm.

### b. Alternative Medical Care

Next, Harrod argues the reviewing commissioner erred by concluding the initial deputy's order for appellees to provide alternative medical care was unwarranted. We conclude the reviewing deputy's decision not to award alternative care was supported by substantial evidence.

The commissioner can order alternative medical care if the employee shows "that the medical care furnished by the employer is unreasonable." *Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 209 (Iowa 2010); *see also* Iowa Code § 85.27(4). Harrod has not met her burden. The record shows she requested alternative treatment from a physician who was not Dr. Pruitt, but it does not show why Dr. Pruitt's treatment was "inferior or less extensive" than the care requested. *Long v. Roberts Dairy Co.*, 528 N.W.2d 122,

124 (Iowa 1995). While Dr. Pruitt indicated in July he was unable to offer more help to Harrod, she declined his further care when her temporary relief faded. Appellees' obligation to provide alternative medical care "turns on the question of reasonable necessity, not desirability." *Id.* at 123. The reviewing deputy addressed Harrod's alternative care argument at length and ultimately concluded Harrod had not met her burden of proof:

> At an appointment on March 28, 2014, Dr. Pruitt identified the next step in claimant's care as injections and cervical steroids; claimant declined the recommended care. As a result, Dr. Pruitt continued with other conservative treatment measures. He recommended additional follow up, at which point he may consider claimant at MMI should she continue to decline treatment. Dr. Pruitt also noted another physician would also require claimant to exhaust conservative measures prior to recommending further intervention.
>
> Claimant argues Dr. Pruitt abandoned claimant's care at this point or shortly thereafter. This argument is not supported by the facts in evidence. Although Dr. Pruitt's medical notes are not in evidence, claimant herself testified to ongoing conservative care with Dr. Pruitt and her testimony is supported by the medical records summary of Dr. Bansal. Therefore, Dr. Pruitt's July 15, 2014 release should not be considered an abrupt abandonment of care; rather, it appears that at the time this opinion was authored, claimant was in a period of symptom relief following epidural steroid injections.
>
> After Dr. Pruitt's release, claimant did request further evaluation. However she placed conditions upon her request; specifically, claimant indicated she did not want to see Dr. Pruitt. Claimant's displeasure with Dr. Pruitt is insufficient to support an award of alternate medical care. Dr. Pruitt provided claimant with prompt and reasonable medical care; there are no medical opinions which would indicate to the contrary. Dr. Bansal subsequently issued a number of recommendations with respect to treatment modalities which could benefit claimant; however, the suggestions are not unlike the conservative measures previously recommended by Dr. Pruitt.

Like the district court, we conclude the reviewing deputy's decision not to award alternative medical care was supported by substantial evidence.

### c. Penalty Benefits

Finally, Harrod argues the reviewing commissioner's decision not to award her penalty benefits was not supported by substantial evidence. Harrod had the burden to prove appellees denied or delayed payments. Iowa Code § 86.13(4)(b)(1). Only when Harrod has met her burden does the burden shift to appellees to show they had a reasonable cause or excuse for not making payments. *City of Madrid v. Blasnitz*, 742 N.W.2d 77, 81 (Iowa 2007). The reviewing deputy concluded Harrod did not meet her burden of proof:

> In this case, the evidentiary record is devoid of any evidence regarding the dates defendants issued payment of indemnity benefits. The sole written document regarding any delay was authored by claimant's counsel on December 16, 2014; however, this document contains an assertion by claimant's counsel as opposed to evidence of a delay. The record contains no payment logs, bank records, cancelled checks, envelopes, or even testimony regarding the specific dates of payment. The [initial] deputy appears to have utilized the payment date of December 19, 2014 based solely upon its reference in a disputed issue on the hearing report.

On appeal, Harrod does not point to any evidence in the record showing or suggesting appellees either denied or delayed payments after Dr. Pruitt found Harrod suffered a permanent five percent whole body impairment on July 15, 2014. Because Harrod failed to do so, we conclude the reviewing deputy's decision not to award her penalty benefits was supported by substantial evidence.

**AFFIRMED.**